■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v PEARL A. REOME, Appellant. — Appeal from a judgment of the County Court of Franklin County (Garvey, J.), rendered March 9, 1983, upon a verdict convicting defendant of the crime of assault in the first degree. ¶ Defendant, her husband James Reome, her niece Diane Butchino, and her niece's husband Wayne Butchino were playing cards at a table in the kitchen of defendant's house on February 28, 1982. Defendant's husband had been verbally abusing her and had threatened to leave the house to visit his ex-wife. Defendant's niece and her husband decided to leave because of the intensity of the abuse. They agreed to James Reome's request for a ride. As he was crossing the room to go out the door, defendant picked up a knife from the stove, confronted him as he approached the door and stabbed him in the side. As he doubled over, defendant fatally stabbed him in the neck. ¶ The State troopers who answered the call to the police may have heard defendant tell her brother that she had stabbed her husband, but her brother later denied this at trial. Defendant's niece told the police that defendant had stabbed her husband. Defendant was taken into the living room with her niece and read her *Miranda* rights by a State trooper. In response to police questioning, she admitted stabbing her husband. She was arrested for assault and taken to the State Police barracks. There she was again given her *Miranda* warnings and, in the presence of two of her nieces, made a written confession. At trial, she denied making crucial portions of this statement. Defendant, at a *Huntley* hearing, testified that, during the interrogation, she frequently asked to go to the hospital to see her husband and to use the telephone to call her sister. This was not denied by the police interrogator. However, she was not permitted to do either. One niece corroborated defendant's testimony that she was very upset, stating that her aunt was in a "fuzzy world". Defendant testified that she was crying so hard she could barely hold the completed statement in her shaking hands. She said she signed the confession because the police promised her she could see her husband as soon as it was done. ¶ The police, unhappy with the errors in spelling in the first statement, decided to take a second written statement. Unlike the earlier oral and written statements, defendant was not allowed to have her nieces present during the interrogation. Unlike the earlier confessions, defendant here made an express waiver of her right to an attorney and her right to remain silent. Defendant's new interrogator, although aware that her husband had just died,

concealed the fact from her. However, this second interrogator did not promise her she could see her husband when the statement was finished as her previous interrogator had. After defendant signed the second statement, she was told of her husband's death. ¶ Defendant was indicted for manslaughter in the first degree in violation of subdivision 2 of section 125.20 of the Penal Law. The suppression court held that the first two confessions were inadmissible because the prosecution had failed to prove beyond a reasonable doubt that defendant had voluntarily waived her rights. That court did uphold the third confession, which was the second written statement, reasoning that defendant's express waiver of her rights before making this confession was sufficient to make it admissible. ¶ At trial, the trial court agreed to charge two lesser included offenses: second degree reckless manslaughter and first degree assault with a deadly weapon. It refused to charge as to criminally negligent homicide, reckless endangerment or the two forms of second degree assault with a deadly weapon. The jury returned a verdict finding defendant guilty of assault in the first degree and defendant received a sentence of 3½ to 10 years' imprisonment. This appeal ensued. ¶ There must be a reversal due to the erroneous ruling by the suppression court in failing to suppress the second written statement. Since the jury's verdict of guilty of assault in the first degree effectively acquitted defendant of manslaughter in the first degree, the only crime charged in the indictment, no further criminal prosecution may be had under that indictment and it must, accordingly, be dismissed. ¶ Defendant urges several grounds for reversal. However, we need only discuss the failure to suppress defendant's third (second written) confession as the fruit of an earlier violation of defendant's rights. The prosecution did not show that there was the "definite, pronounced break in the interrogation" which neutralized the effect of the illegal questioning (*People v Chapple,* 38 NY2d 112, 115). In the instant case, the record shows defendant was questioned continually from 10:55 P.M. to 1:15 A.M. The only breaks during this period occurred when defendant was taken to the police station, which consumed about 15 minutes, and when the police switched interrogators, which took about the same amount of time. Such breaks are inadequate to dissipate the taint flowing from the earlier illegal police questioning (see *People v Johnson,* 79 AD2d 617; *People v Newson,* 68 AD2d 377, 392). ¶ In the case at bar, the police had earlier violated defendant's privilege against self incrimination and her "indelible" right to counsel under the State Constitution. Defendant's first interrogator promised her that she would be allowed to go to the hospital to see her husband if she signed her statement. Defendant had been begging to be allowed to see her husband and, considering her state of mind, this promise was indeed coercive. This violation of defendant's privilege against compelled self incrimination tainted her final confession (*People v Valerius,* 31 NY2d 51, 55). ¶ Additionally, defendant frequently inquired of her first interrogator if she could call her sister. She wanted to call her sister after she was arrested since her sister "knew more about legal matters than I did". Her requests were refused by the police, even during the 15-minute hiatus between the two interrogations at the police barracks. Thus, the police intentionally cut off the avenue by which she was most likely to obtain counsel and this illegality reaches forward to taint her final confession (cf. *People v Talamo,* 55 AD2d 506, 508; see, also, *People v Bevilacqua,* 45 NY2d 508, 514). It was, therefore, error for the trial court to admit into evidence her final confession (see *People v Chapple, supra*). This second written confession contained strong evidence regarding defendant's intent to harm her husband, and, for that reason, its admission cannot be said to be harmless error (see *People v Crimmins,* 36 NY2d 230, 237). The final confession should, therefore, have been suppressed. ¶ We would further point out that defendant's conviction of first degree

assault with a deadly weapon was of a crime which was neither charged in the indictment nor a lesser included offense of the charged crime of manslaughter in the first degree under the first prong of the test set forth in *People v Green* (56 NY2d 427) and *People v Glover* (57 NY2d 61) for submission of a lesser included offense to the jury. ¶ Since defendant has been acquitted of the sole charge contained in the indictment, there is nothing remaining to support further prosecution under that accusatory instrument (*People v Gonzalez*, 61 NY2d 633; *People v Mayo*, 48 NY2d 245). Accordingly, our reversal in this case mandates that the indictment be dismissed, with leave to the People to represent any appropriate charges to another Grand Jury. ¶ We find it unnecessary to reach any other allegations of error raised by defendant. ¶ Judgment reversed, on the law, and indictment dismissed, with leave to the People to represent any appropriate charges to another Grand Jury. Mahoney, P. J., Weiss, Mikoll and Yesawich, Jr., JJ., concur.