■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RUDOLPHO CASIANO, Appellant.—Appeal by defendant from a judgment of the Supreme Court, Kings County (Lombardo, J.), rendered November 7, 1983, convicting him of murder in the second degree and criminal possession of a weapon in the second degree, upon a jury verdict, and imposing sentence. The appeal brings up for review the denial, after a hearing, of defendant's motion to suppress certain statements.

Judgment affirmed.

Defendant contends that two confessions made to the police shortly after his arrest should have been suppressed. However, great weight must be accorded the determination of the hearing court with its particular advantages of having seen and heard the witnesses *(People v Prochilo,* 41 NY2d 759, 761), and that determination should not be disturbed where it is supported by the record *(People v Gee,* 104 AD2d 561, *lv denied* 64 NY2d 759). We have reviewed the record in this case and conclude that suppression of the two confessions was properly denied because the evidence supports the suppression court's determination that defendant was properly advised of his *Miranda* rights and voluntarily confessed. Moreover, the confessions were not made under circumstances violative of defendant's right to counsel. Although the arresting officer was aware the defendant was facing another criminal charge at the time of his arrest, his inquiry elicited a response from defendant that the pending case had been closed and, therefore, the officer was entitled to end his inquiry *(see, People v Marshall,* 98 AD2d 452; *see also, People v Lucarano,* 61 NY2d 138). In addition, notwithstanding defendant's claim that certain of his family members were denied access to him while he was in police custody, there is no evidence in the record that his family, who knew where defendant was being held, ever attempted to retain counsel for him, nor did defendant ever seek to communicate with them, and there is simply no suggestion of "a pattern of isolation and trickery designed to keep the defendant from obtaining counsel" *(People v Fuschino,* 59 NY2d 91, 100; *cf. People v Bevilacqua,* 45 NY2d 508; *People v Townsend,* 33 NY2d 37). There is no requirement that police officers permit family members of a competent adult in custody to communicate with him *(People v Crim-*

*mins,* 64 NY2d 1072, 1073), and the denial of such access is "germane, but in no wise controlling on the question of voluntariness" *(People v Hocking,* 18 NY2d 832, 833; *see also, People v Taylor,* 16 NY2d 1038, 1039-1040; *People v Riley,* 55 AD2d 987, 988).

Notwithstanding the denial of his motion to suppress, defendant was entitled to attempt to establish at trial that evidence of his confessions should be disregarded by the trier of fact on the ground that they had been involuntarily made (CPL 710.70 [3]; 60.45; *People v Graham,* 55 NY2d 144; *People v Ruffino,* 110 AD2d 198). For that purpose, defendant adduced testimony at the trial from his mother and sister to the effect that they had attempted to see defendant at the precinct and had been prevented from doing so by the police. However, the trial court instructed the jury to disregard the testimony of defendant's mother as having "no bearing on the issue of voluntariness". Because the denial of access by family members to the accused is relevant to the determination of voluntariness *(People v Hocking, supra; People v Taylor, supra; People v Riley, supra),* that instruction was improper. Nevertheless, the jury was permitted to consider the testimony of defendant's sister regarding the same subject, in its entirety, without any similar limiting instructions from the court. Moreover, the court's instructions to the jury on the issue of voluntariness, and its marshaling of the evidence adduced by each party on that issue, were fair and proper. We conclude, therefore, that the erroneous charge was harmless *(see, People v Crimmins,* 36 NY2d 230).

We have considered defendant's remaining contentions and find them to be without merit. Mollen, P. J., Mangano and Bracken, JJ., concur.

Gibbons, J., dissents and votes to reverse the judgment and order a new trial, with the following memorandum. I cannot concur in the result reached by my colleagues. Defendant was entitled to a jury trial on the issue of voluntariness, and the trial court was bound to " 'submit such issue to the jury* under instructions to disregard such evidence upon a finding that the [defendant's] statement was involuntarily made' " *(People v Graham,* 55 NY2d 144, 147; CPL 710.70 [3]; 60.45; *People v Huntley,* 15 NY2d 72, 78; *People v Ruffino,* 110 AD2d 198). The Trial Judge effectively removed the issue from the jury's consideration by graphically and pointedly communicating his impression that the involuntariness issue was not valid, had no merit, and was a specious issue. Consequently, defendant was deprived of a fair trial *(see, People v Lewis,* 64 NY2d 1031;

*People v Walker,* 198 NY 329, 334; *People v Baker,* 103 AD2d 749, 750; *cf. People v Adler,* 274 App Div 820; *People v Moulton,* 43 NY2d 944, 945).

At trial, defendant offered the testimony of two witnesses, his mother and sister, to show that his statements were involuntarily made.

Mrs. Aida Casiano testified that "more than ten" people in civilian clothes with rifles and revolvers arrested her son. They took him out of bed, handcuffed him and took him away without telling her the reason. She stated, "I was so very nervous, after seeing that they had handcuffed him and besides * * * I had been operated [on] and I was getting". At this point, an objection by the prosecutor resulted in the following colloquy:

"THE COURT: Objection sustained. What is the purpose of this witness? Is it to curry sympathy with the jury * * *? She is not on trial. It is her son who is on trial for murder. Not this lady.

"MR. MIRTO [Defense Counsel]: To challenge the confession.

"THE COURT: Challenge what confession?

"MR. MIRTO: The voluntariness of the confession * * *

"THE COURT: Ask her if she was present when the confession was made. Ask her, if you are going to challenge the voluntariness of the confession.

"MR. MIRTO: I am relying on the law of the cases that I gave your Honor.

"THE COURT: You can rely on whatever you want. I am relying on the evidence in this case, Mr. Mirto. If that's what the purpose of it is ask her when the confession was made.

"Q.: Mrs. Casiano, did there come a time that you went to the police station, the 75th precinct?

"THE COURT: The jury will disregard that business about challenging the confession. This is not the way to do it * * * You will disregard that completely and up to this point I don't see what this witness is doing on this witness stand but we will give Mr. Mirto an opportunity to show how this witness is going to challenge the voluntariness of the confessions made by her son."

Thereafter, when the prosecutor objected to defense counsel's question concerning the witness' attempt to see her son at the police station as "leading", the court interjected: "There is absolutely nothing in the law that says a 17 year old has to have his mother present where he is being interrogated by the police while in custody with reference to a murder."

Mrs. Casiano then testified that she went to the police station about an hour after her son was arrested and was told to "go home". She was not permitted to answer a further question as to whether 18 hours later she finally heard from the police, for, upon objection by the prosecutor, the court stated:

"I have already ruled that the question is out of order. So I rule that your question is out of order.

"The jury will disregard those questions. As a matter of fact, up to this point *the jury may very well disregard this entire testimony. It has no bearing on the issue of voluntariness*" (emphasis supplied).

Thus, the trial court, in no uncertain terms, advised the jury that the circumstances surrounding defendant's arrest and the denial of access to his mother had no bearing on the issue of voluntariness.

The majority acknowledges the error *(see, People v Hocking,* 18 NY2d 832; *People v Taylor,* 16 NY2d 1038; *People v Riley,* 55 AD2d 987), but concludes that it was rendered harmless by the testimony of defendant's sister which was permitted without "similar limiting instructions from the court". This rationale ignores the caustic nature of the trial court's exchange with counsel and its absolute instruction to the jury to disregard the testimony of defendant's mother as irrelevant.

Furthermore, the trial court compounded its error by failing to distinguish one defense witness from the other when it marshaled the evidence. The court stated: "The defense called two witnesses, Aida Casiano, the mother of the defendant, and Betty Casiano, the sister of the defendant and they testified, in substance, that they didn't know why the defendant was being arrested. I think the testimony was that a host of detectives came into the house and took the defendant away and that when they went to the police station, first they said several hours later, then they said one hour later, but in any event, that they were told by the police there was nothing they could do there, in words or substance, and to go home and they would notify them as to the outcome and then you heard the testimony that they received telephone calls." The record simply does not support a conclusion of harmless error based upon the sister's testimony. Once the trial court merged the testimony of the two witnesses, the error infected the testimony of defendant's sister, even if the court's instruction and demeanor had not already done so.

Therefore, I conclude that the conduct of the court deprived

defendant of a fair trial, a right which cannot be negated, no matter how overwhelming the proof of guilt *(see, People v Crimmins,* 36 NY2d 230, 238). The jury was given the impression that the court had a bias *(see, People v Lee,* 109 AD2d 804, 805), in violation of the fundamental rule that a court may not carry out its functions "in language and in a manner from which a jury will gain the impression of existence of an opinion on the part of the court as to the * * * merits of any issue in the case" *(see, People v Moulton,* 43 NY2d 944, 945, *supra).* The trial court not only negated defendant's constitutional right to a fair trial but also ignored the statutory mandate set forth in CPL 710.70 (3) that "the defendant may adduce trial evidence and otherwise contend that the statement was involuntarily made". While the court did submit the voluntariness issue to the jury with an instruction in substance "to disregard such evidence upon a finding that the statement was involuntarily made" (CPL 710.70 [3]), it had already predetermined this issue for the jury by its brusque treatment of the voluntariness issue and its trial instruction to the jury to "disregard that business about challenging the confession". The voluntariness of defendant's statements was a matter solely within the province of the trier of fact, and " '[n]o matter how conclusive the evidence * * * each of the * * * fundamental facts was for the jury to pass upon' " *(People v Lewis,* 64 NY2d 1031, 1032, *supra).* Defendant is entitled to a new trial.