[No. 52374–6.   En Banc.   November 6, 1986.]

THE STATE OF WASHINGTON, *Petitioner,* v.
SAM PROK, *Respondent.*

*Seth R. Dawson, Prosecuting Attorney,* and *Seth Aaron Fine* and *Ellen J. Groman, Deputies,* for petitioner.

*Mark W. Muenster* and *Anita L. Farris* of *Snohomish County Public Defender Association,* for respondent.

UTTER, J.—The prosecution seeks to overturn a trial court decision, affirmed on appeal, dismissing this driving while intoxicated (DWI) case for JCrR 2.11(c)(1) violations. We agree with the prosecution that suppression of the tainted evidence is the appropriate remedy. In reversing the lower courts we hold that the remaining evidence, held to be admissible, was taken before the defendant came within the scope of protection afforded by JCrR 2.11(c)(1).

The trial court made the following findings: Respondent, Sam Prok, is Cambodian. He was arrested on December 3, 1983, for DWI and for failing to have a valid driver's license. Prior to Prok's trial, a hearing was held to determine whether violations of JCrR 2.11 required dismissal of the DWI charge or merely suppression of the Breathalyzer test. Two witnesses testified at the hearing—a state trooper and Prok, who testified through an interpreter.

The trooper testified to the following: He saw Prok's car strike a semi–truck, spin around, and stop. He then saw Prok exit the car and sit on a guardrail. Upon closer observation, the trooper found Prok with a bloody lip, but no further evidence of injury. The trooper concluded that Prok was extremely intoxicated, noting Prok's slurred speech, weaving and swaying, and his "passing out" after being physically carried to the patrol car. Narrative Report of Proceedings (NRP), at 2–3.

After transporting Prok to the county jail, the trooper and two other officers checked Prok and concluded his inability to stand was due to extreme intoxication rather than injury from the accident. The trooper then read Prok his *Miranda* rights before asking him questions from the Alcohol/Drug Arrest Report. The trooper next explained to Prok his 242 (implied consent) rights and administered the Breathalyzer examination. While testifying that he had done his best to communicate with Prok, the trooper admitted "that he never specifically asked Mr. Prok if he understood written or spoken English." NRP, at 4.

Testifying through an interpreter, Prok professed to understand "very little spoken English, no written English and that he did not understand much of what the Trooper said on the night he was arrested." NRP, at 4. While acknowledging that he knew what an attorney was, Prok claims he did not understand that he had the right to refuse a Breathalyzer test. The two witnesses dispute whether the trooper was able to drive Prok home because Prok had given him directions or because the trooper had obtained Prok's address from Prok's temporary permit. NRP, at 4–5.

"The trial judge ruled that Mr. Prok did not understand his right to counsel, nor his 242 rights, and dismissed the case on April 3, 1984, pursuant to his interpretation of *State v. Fitzsimmons,* 93 Wn.2d 436, 610 P.2d 893 (1980)." NRP, at 5. The Snohomish County Superior Court upheld the trial court's dismissal of the case, see findings of fact and conclusions of law, Clerk's Papers, at 2–5, as did the . Court of Appeals. *See State v. Prok,* 42 Wn. App. 166, 709 P.2d 401 (1985).

This case comes to this court on discretionary review. On appeal, the State raises only the following legal issue: Whether dismissal is the proper remedy where a DWI defendant is not advised of his right to counsel "in words easily understood," as required by JCrR 2.11(c)(1). Holding that Prok's JCrR 2.11 rights did not accrue until his arrest, we conclude that dismissal is inappropriate where there is

credible untainted evidence acquired prior to the violation. In so doing, we do not reach the issue of whether the trooper's actions in this case constituted a violation of JCrR 2.11. The State has conceded a violation of the rule in this case. We address here solely the proper remedy for a violation of the rule.

We base our conclusion on the express language of JCrR 2.11(c)(1) and those cases which have interpreted it. JCrR 2.11(c)(1) provides the following:

When a person is taken into custody he shall immediately be advised of his right to counsel. Such advice shall be made in words easily understood, and it shall be stated expressly that a person who is unable to pay a lawyer is entitled to have one provided without charge.

The rule's language expressly provides an individual's right to advisement of the right to counsel exists when that "person is taken into custody." JCrR 2.11(c)(1). JCrR 2.11(b)(1) states that "[t]he right to counsel shall accrue as soon as feasible after the defendant is taken into custody, when he appears before a committing magistrate, or when he is formally charged, whichever occurs earliest."

Given the facts before us, the police had not achieved the level of control necessary to give rise to the rule's protection. Prok had not yet been formally charged, nor had he been taken before a committing magistrate. There is reason to doubt that he had even been taken into custody. The state trooper's trial testimony indicates he could not be sure whether Prok's behavior at the accident scene was alcohol or injury induced. Even though he took Prok to the county jail, rather than the hospital, his continued doubts about Prok's condition are evidenced by his need to consult with other troopers to determine the reason for Prok's inability to stand.

Moreover, even if the trial court were to have found that Prok had been taken into custody, there is no evidence by which we could conclude that it was feasible to advise Prok of his right to counsel any sooner than the trooper attempted to do so. For whatever reason, Prok was in no

condition to be left by himself at the accident scene. The trooper exercised sound judgment in taking Prok to the county jail for closer observation. The earliest that the trooper could have apprised Prok of his rights was upon arrival at the jail. At most, this would set the time of Prok's right to advisement at the point just prior to the trooper's consultation with other troopers on Prok's condition. Because of the ambiguity evidenced by that consultation, discussed above, we hold that Prok was not in custody at that point. We note, in passing, however, that the result of this position alters only slightly, if at all, the credibility and weight of the admissible evidence.

A review of our case law supports this result. In *Tacoma v. Heater*, 67 Wn.2d 733, 409 P.2d 867 (1966), the defendant had already been arrested at the scene of the accident. It was not until he arrived at the jail that he requested an attorney and was denied. The court identified the "critical stage," when the defendant's right to assistance of counsel accrued, as "no later than the moment when, immediately after the police officers had conducted their tests for sobriety and had interrogated the defendant, they charged him with the offense." *Heater*, 67 Wn.2d at 739.

The facts in *State v. Fitzsimmons,* 93 Wn.2d 436, 610 P.2d 893, 18 A.L.R.4th 690, *vacated on other grounds,* 449 U.S. 977, *aff'd on remand,* 94 Wn.2d 858, 620 P.2d 999 (1980) are virtually identical to those just recited. In contrast, primarily because of Prok's own incapacity, the identical point of the "critical stage" was not reached until the county jail consultation. For this reason we hold the trooper's testimony of Prok's observable behavior, prior to the JCrR 2.11(c)(1) violations, is admissible.

We reverse and remand for trial.

DOLLIVER, C.J., and BRACHTENBACH, DORE, PEARSON, ANDERSEN, CALLOW, GOODLOE, and DURHAM, JJ., concur.