OPINION OF THE COURT
John J. Ark, J.
The defendant, Sallie A. Wilmot-Kay, was arrested for speeding and driving while intoxicated on May 22, 1986 by Brighton Town Police Officer Richard McCorry. After her *1082 arrest, the defendant was taken to the police station for the purpose of administering a breath test. She arrived at the police station at 3:05 a.m. Prior to taking the test, the defendant asked to use the telephone. Although there was no testimony as to whether she desired to call an attorney, she did call her sister whom she asked to come to the police station. Upon arriving, the sister both identified herself to the dispatcher and inquired as to the charges and the status of the investigation. At pages 20 and 21 of the suppression hearing held on August 28, 1986, the sister testified as follows:
"A. Yes, I walked in and there was a man sitting at the window, a police officer, and I asked him if my sister was there, Sally Wilmot. And he said, 'Who are you?’ And I said, 'I’m Mary Worboys.’ And he said, 'Are you a Wilmot also?’ And I said, 'Yes, I’m her sister, Mary Worboys.’ And he said, 'Are you a Wilmot also?’ And I said, 'Yes.’ And I said, 'Can I speak to her?’ And he said, no, I couldn’t speak to her, that he couldn’t speak to me right now. And I asked him — I told him that she might be upset because she’s never been in a police station before and I thought maybe if I could speak to her * * *
"A. And then he said no, I couldn’t speak to her. Then I asked if she had called her lawyer and he said he didn’t know and then I said, 'Well, has she taken the breathalyzer?’ And he said he didn’t know. And I said, 'Well, could I find out so I can call if she hasn’t called?’ And he said, 'We’ll be with you in a few minutes. Can you sit down?’ And so I sat down and I waited and I got back up because I wanted to make sure that I could call my lawyer before she took the breathalyzer, if she hadn’t already taken it. And he said that he would find out for me and I said, 'Can I have a quarter?’ * * *
"A. And then I asked if I could make a phone call and he said, 'There is a phone in the hall.’ And I said, 'Can I borrow a quarter?’ And he said, 'No, you can’t borrow a quarter.’ ”
Upon a reading of the complete transcript, the court finds that the sister repeatedly asked the dispatcher if she could speak to the defendant. The dispatcher continuously replied that the defendant would be released shortly and that she could not speak to the defendant. While she was waiting for the defendant to be released, the sister asked whether the defendant had called an attorney and whether the defendant had taken the breath test. The dispatcher stated that he "did not know”. The sister decided to call an attorney but discov *1083 ered that she only had a $50 bill. The dispatcher refused to give her change to use a pay phone but indicated that there was a convenience store within a mile of the police station. The sister offered the $50 bill to the dispatcher but he continually refused to give her change. The sister believed she had no choice but to wait for the defendant. The defendant was finally released at 4:20 a.m. and was taken home by her sister.
The issue raised is whether improper police behavior requires suppression of the defendant’s breath test. More specifically, were the isolation of the defendant from her sister and the misleading information given to her sister in violation of the defendant’s right to counsel?
The record does not indicate that the defendant at any time requested to consult with an attorney. The arresting officer properly prohibited defendant from making any further phone calls because of her belligerent and abusive behavior. Although she did calm down after being placed in a cell, she did not request any further use of the telephone. However, prior to being prohibited from further use of the phone, the 23-year-old defendant, by calling her sister, chose not to confront the police alone. In fact, she set in motion a process which could have resulted in her obtaining the assistance of counsel.
Three intervening events affected this process. First, her sister arrived at the police station timely but without adequate change to use the public telephone. Although, the dispatcher was not required to give her change, he could have made a phone available. Second, the dispatcher told the sister that he did not know whether the defendant had taken the breath test or whether the defendant had called an attorney. Third, the dispatcher repeatedly told the sister that the defendant would be released "shortly”. Accurate information was readily available to the dispatcher but, for whatever reason, he chose not to relate it to the sister.
In People v Casassa (49 NY2d 668, 681) the Court of Appeals held "that when an attorney attempts to intercede in a criminal defendant’s behalf and is prevented from doing so by police misinformation, that defendant’s right to counsel is infringed”. The court found that "[n]or is there any evidence in the record to suggest that this is a case * * * where the record supported the inference that the police intentionally deprived the defendant of access to his family in an effort to obtain a confession” (at 681-682).
In People v Crimmins (64 NY2d 1072) the court indicates *1084 that the police had an obligation to let family members or friends communicate with a competent adult in custody if there was any evidence that the defendant sought the assistance of these individuals.
In People v Reome (101 AD2d 632, 633) the Third Department held: "defendant frequently inquired of her first interrogator if she could call her sister. She wanted to call her sister after she was arrested since her sister 'knew more about legal matters than I did’. Her requests were refused by the police, even during the 15-minüte hiatus between the two interrogations at the police barracks. Thus, the police intentionally cut off the avenue by which she was most likely to obtain counsel and this illegality reaches forward to taint her final confession”. In the case at bar, the police allowed the defendant to call her sister but in effect sealed off the most likely avenue by which the assistance of counsel might have reached her (see, People v Talamo, 55 AD2d 506).
In People v Casiano (117 AD2d 744) the in-custody defendant’s family members were denied access to the defendant. The court stated that there was no evidence that defendant’s family, who knew where defendant was being held, ever attempted to retain counsel for him nor did defendant ever seek to communicate with them. In the case at bar, the defendant instigated the communication with her sister. Furthermore, in Casiano, the court found that there was "simply no suggestion of 'a pattern of isolation and trickery designed to keep the defendant from obtaining counsel’ ” (at 744). However, in the instant situation the dispatcher acted in such a way that the relevant questions of the sister were not properly addressed and a simple process by which she could contact an attorney was not made available.
Accordingly, the motion to suppress the result of the breath test is hereby granted, and the case is continued for disposition to April 6, 1987 at 5:30 p.m.