[No. 56288–1. En Banc. January 10, 1991.]

THE CITY OF SPOKANE, *Petitioner,* v. DANIEL W. KRUGER, *Respondent.*

*James C. Sloane, City Attorney,* and *Robert A. Jalovi, Assistant,* for petitioner.

*Joseph R. Kane, Public Defender,* and *Michael J. Delay, Assistant,* for respondent.

DURHAM, J.—The City of Spokane challenges the dismissal of charges against Daniel W. Kruger for driving while intoxicated. Spokane asserts that the remedy for the denial of counsel in violation of former court rule JCrR 2.11(c)(2), now CrRLJ 3.1(c)(2),[1] is suppression of the evidence gathered after the violation, rather than dismissal. We agree and reverse the order of dismissal.

At approximately 1:30 a.m. on June 16, 1987, police officer J.M. Harvey stopped Kruger for speeding and investigation of driving while under the influence of intoxicating liquors (DWI). Prior to the stop, Harvey observed Kruger weaving in his lane. Kruger continued to weave after turning a corner. After making the stop, Harvey observed that Kruger's eyes were bloodshot and watery, his speech was slurred, and there was a strong odor of intoxicants on his

---

[1]The Justice Court Criminal Rules were replaced by the Criminal Rules for Courts of Limited Jurisdiction on September 1, 1987. CrRLJ 3.1 is essentially identical to former JCrR 2.11, which was in effect at the time Kruger was arrested and taken into custody.

breath. When Kruger got out of his car, he fell against it and was stumbling from side to side. He was unable to complete field sobriety tests. Kruger could not stand on one leg without falling backward and waving his arms. He was unable to follow directions or recite the alphabet. At that time, Kruger was arrested for DWI, handcuffed, and put in the patrol car. Because of Kruger's resistance, Harvey required the assistance of a backup officer, Officer Nemec, to get Kruger into the car.

When Harvey secured Kruger's car, he found an open can of beer, which was approximately one-fourth full, and six other beer cans, three empty and three full, on the backseat. He also found a small container, which later proved to contain marijuana. Kruger was cited for having an open container of alcohol in the car and for speeding. He was then taken to the Spokane City-County Jail, where he was booked for driving while under the influence of alcohol or drugs, resisting arrest, and possession of a controlled substance.

Once at the station, Kruger was taken to the Breathalyzer room. He was read his constitutional rights, which he refused to waive. Kruger then asked to talk with an attorney and Harvey told him that he could talk with an attorney by telephone. Kruger refused to get out of his chair and demanded that Harvey get him an attorney and bring the attorney to the Breathalyzer room. Harvey explained to the defendant that an attorney could not be brought to him. Harvey reiterated at least three times that Kruger could contact an attorney by telephone. Kruger became irritated and began yelling loudly. He refused to get out of the chair to use the phone.

The telephone was located approximately 6 feet from Kruger, just outside the Breathalyzer room. Kruger was not given the public defender phone number nor presented with a list of on-call public defenders. The Spokane County Public Defender provides a list of on-call 24-hour public defenders to the Spokane Police Department for DWI arrests.

Harvey twice read Kruger his implied consent warnings.[2] Kruger refused to take the Breathalyzer test and refused to sign the implied consent warnings.[3] Kruger was then charged with DWI.

At District Court, Kruger moved to dismiss the DWI charge, asserting that he had been denied access to counsel in violation of JCrR 2.11(c)(2) and the Sixth Amendment. JCrR 2.11(c)(2) provided:

> At the earliest opportunity a person in custody who desires counsel shall be provided access to a telephone, the telephone number of the public defender or official responsible for assigning counsel, and any other means necessary to place him in communication with a lawyer.

After his motion for dismissal was denied, Kruger raised the issue in a writ of review in superior court. The Superior Court reversed the District Court's decision and directed that the DWI charge be dismissed because "provid[ing] an accused with the daytime number of the Public Defender's office when that office is closed is not reasonably calculated to place him in communication with a lawyer."

Spokane then moved for discretionary review in the Court of Appeals, arguing that Kruger had not been denied access to counsel and that dismissal was, in any event, an inappropriate remedy for a violation of JCrR 2.11(c)(2). After the commissioner denied the motion, Spokane moved to modify the commissioner's ruling solely on the remedy

---

[2] RCW 46.20.308 provides, in part:

"(1) Any person who operates a motor vehicle within this state is deemed to have given consent . . . to a test or tests of his or her breath or blood for the purpose of determining the alcoholic content of his or her breath or blood if arrested for any offense where, at the time of the arrest, the arresting officer has reasonable grounds to believe the person had been driving . . . while under the influence of intoxicating liquor.

"(2) . . . The officer shall warn the driver that (a) his or her privilege to drive will be revoked or denied if he or she refuses to submit to the test, and (b) that his or her refusal to take the test may be used in a criminal trial."

[3] At one point, Kruger asserted that he had never been asked to take a Breathalyzer test. However, he apparently has abandoned that position as he does not dispute Spokane's assertion that he refused to take the test.

issue.[4] The Court of Appeals accepted discretionary review, but, relying on *State v. Fitzsimmons,* 93 Wn.2d 436, 610 P.2d 893, 18 A.L.R.4th 690, *vacated and remanded,* 449 U.S. 977, 66 L. Ed. 2d 240, 101 S. Ct. 390, *aff'd on remand,* 94 Wn.2d 858, 620 P.2d 999 (1980), upheld the dismissal in an unpublished decision. This court accepted review.

JCrR 2.11(b)(1) establishes the parameters of the right to counsel in these circumstances.

> The right to counsel shall accrue as soon as feasible after the defendant is taken into custody, when he appears before a committing magistrate, or when he is formally charged, whichever occurs earliest.[5]

Thus, Kruger's right to counsel accrued as soon as he was arrested and put in the patrol car.[6] Because the City has conceded that Kruger was denied counsel in violation of JCrR 2.11(c)(2), our review is limited to the proper remedy for that violation.

As noted by the Court of Appeals, in *Fitzsimmons,* this court held that dismissal was the only appropriate remedy in DWI cases for the denial of counsel in violation of JCrR 2.11(c)(2). However, in another more recent DWI case, *State v. Prok,* 107 Wn.2d 153, 727 P.2d 652 (1986), suppression was held to be the proper remedy where credible untainted evidence is obtained before the violation.

---

[4]In its motion to modify the commissioner's ruling, Spokane did not assign error to the Superior Court's finding that the officers violated JCrR 2.11(c)(2). Counsel for the City conceded the violation in its briefs and oral argument and the sole issue before the Court of Appeals was "whether the violation warrants outright dismissal or suppression of subsequent evidence gathered by the police."

[5]Under CrRLJ 3.1(b)(1), the phrase "is taken into custody" has been replaced with the phrase "has been arrested".

[6]Under the Sixth Amendment, the right to an attorney attaches only after charges are formally filed. *Kirby v. Illinois,* 406 U.S. 682, 689–90, 32 L. Ed. 2d 411, 92 S. Ct. 1877 (1972); *Heinemann v. Whitman Cy.,* 105 Wn.2d 796, 800, 718 P.2d 789 (1986). Thus, the court rule "goes beyond the requirements of the constitution." *Heinemann,* at 802. Because Kruger's Sixth Amendment right to counsel did not attach until he was formally charged after refusing to take the Breathalyzer test, his constitutional right to counsel is not at issue.

Although the court in *Prok* strove to distinguish *Fitzsimmons,* the factual context of this case exposes the underlying tension between the two opinions. The conflict is fundamental and must be resolved. Thus, this court is faced with a choice as to which remedy—dismissal or suppression—best serves to protect the rights of the accused and deter police misconduct, while at the same time protecting the public by keeping drunk drivers off of our highways.

In *Fitzsimmons,* the defendant was stopped by a police officer at approximately 11 o'clock in the evening after the officer saw him twice swerve across the center line with his car, once when traffic was coming from the other direction. The officer noted that Fitzsimmons had a moderate to strong odor of intoxicants on his breath, and his eyes were watery and bloodshot. After conducting field sobriety tests, the officer arrested Fitzsimmons at the scene, placed him in custody, and cited him for DWI. *Fitzsimmons,* at 439.

Fitzsimmons was read his rights, including the right to appointed counsel. He then asked for an attorney, but said he had no money to pay for one. The officer told him that he could not have an appointed attorney at that time, but that the court could appoint one at "pre–trial or at [the] arraignment date." *Fitzsimmons,* at 440. Fitzsimmons then refused to take the Breathalyzer test. *Fitzsimmons,* at 440.

Fitzsimmons was convicted on the DWI charge and, on appeal to superior court, he moved for dismissal. The court denied the motion, but concluded that Fitzsimmons had illegally been denied access to counsel and ruled that all evidence obtained after the violation of his rights would be suppressed. However, because all of the State's evidence had been gathered before Fitzsimmons requested counsel, no evidence was actually suppressed. *Fitzsimmons,* at 440. The Court of Appeals affirmed the judgment. On review, this court reversed the appellate court and dismissed the DWI charge.

We held that Fitzsimmons' right to counsel under the rule had been violated because he had been denied access

to an attorney after being arrested and charged. *Fitzsimmons,* at 441. However, the court went on to say that compliance with the rule was also constitutionally compelled because of the unique nature of DWI cases. *Fitzsimmons,* at 441–42. The court relied on the analysis in *Tacoma v. Heater,* 67 Wn.2d 733, 409 P.2d 867 (1966) to state that, because evidence of intoxication dissipates relatively quickly, the time right after the arrest is a critical stage in a DWI case.

*Heater* held that the violation of the defendant's constitutional rights to counsel under the Sixth Amendment and due process rendered the defendant's DWI conviction void. *Heater,* at 741.[7] After being involved in a minor traffic accident, Heater was arrested for DWI and taken to jail. Pursuant to police department regulations, he was prohibited from making any phone calls until 4 hours after his arrest. *Heater,* at 735. Heater's constitutional right to an attorney was violated because the "critical stage", when his right to assistance of counsel accrued, was "no later than the moment when, immediately after the police officers had conducted their tests for sobriety and had interrogated [Heater], they charged him with the offense." *Heater,* at 739. The court went on to say that the denial of counsel resulted in irreparable prejudice because the most effective way for Heater to defend against the DWI charge would have been to get disinterested witnesses who could testify as to their observations of his condition at the time he was charged. *Heater,* at 739.

Three Justices dissented, arguing that the denial of counsel in a DWI case does not "*invariably and irreparably* prejudice[] that person's defense to an extent compelling a dismissal of the charge." *Heater,* at 765 (Hamilton, J., dissenting). The dissent further argued that the circumstances surrounding Heater's arrest and denial of counsel did not result in irreparable prejudice because Heater consented to

---

[7]*Heater* predated JCrR 2.11, which was not adopted until 1973. 82 Wn.2d 1179 (1973).

the physical coordination tests and could secure testimony from persons who had seen him during the time leading up to, and at the scene of, the accident. *Heater,* at 767. Thus, the denial of his right to counsel did not justify or compel dismissal, but warranted, at most, the suppression of evidence accumulated by the police after the violation. *Heater,* at 768 (Hamilton, J., dissenting).

*Fitzsimmons* adhered to the rule of the *Heater* majority, stating that, when counsel has been wrongfully denied in a DWI case, "'it must *inevitably* follow that [the accused] suffered irreparable prejudice'" and held that *Fitzsimmons'* right to counsel had been violated and that dismissal was the proper remedy. *Fitzsimmons,* at 451 (quoting *Heater,* at 745). The holding was expressly limited to cases where intoxication is an element of the offense charged. *Fitzsimmons,* at 445.

The United States Supreme Court granted a writ of certiorari in *Fitzsimmons,* vacated the judgment, and remanded with an order requiring this court to consider whether *Fitzsimmons* was based upon state or federal constitutional grounds, or both. *State v. Fitzsimmons,* 449 U.S. 977, 66 L. Ed. 2d 240, 101 S. Ct. 390 (1980). In response, we stated that the decision in *Fitzsimmons* rests primarily on independent state court rule JCrR 2.11. We noted that the discussion of constitutional law, which was undertaken after the holding that *Fitzsimmons'* rights under the court rules were violated, merely demonstrates the application and effect of the rules that provide the rationale for the ruling. *State v. Fitzsimmons,* 94 Wn.2d 858, 858–59, 620 P.2d 999 (1980). Thus, while the constitutional analysis is "persuasive", the rule provides an adequate and independent state ground for the decision. *Fitzsimmons,* 94 Wn.2d at 859. The opinion was affirmed with no alterations or amendments. *Fitzsimmons,* at 859.

*State v. Prok,* 107 Wn.2d 153, 727 P.2d 652 (1986) took a different turn. There, we held that suppression of any evidence obtained after a violation of the right to counsel was the proper remedy, not dismissal of the underlying charge.

In *Prok,* the evidence acquired before the violation, which the court held was admissible, was the testimony of a state trooper. The trooper saw Prok's car strike a semi-truck, spin around and stop. After the car came to a stop, Prok got out of his car and sat on a guardrail. He had a bloody lip, but no other obvious injuries. His speech was slurred, he was weaving and swaying, and he passed out after being carried to the patrol car. *Prok,* at 154. Prok was transported to jail, where the trooper consulted with two other officers and concluded that Prok's inability to stand was due to extreme intoxication rather than injury. The trooper read him his rights and questioned him from an Alcohol/Drug Arrest Report. The trooper then explained and administered the Breathalyzer test. Although Prok is Cambodian, the trooper did not ask if Prok could speak English. *Prok,* at 155.

Because the State conceded that Prok was not advised of his right to counsel "in words easily understood", as required by JCrR 2.11(c)(1), only the remedy issue was addressed. *Prok,* at 156. We held that Prok's right under that rule did not accrue until his arrest at the station and concluded that dismissal of the charge was inappropriate because there was "credible untainted evidence acquired prior to the violation." *Prok,* at 156.

Although the facts in *Prok* differed from those presented in *Fitzsimmons,* the differences are not substantial enough to warrant the disparate results. In both cases, credible untainted evidence was presented in the form of a police officer's observation of the defendant's behavior prior to the denial of his right to counsel under JCrR 2.11. *Fitzsimmons* could be distinguished in that there was no tainted evidence to suppress because he refused to take the Breathalyzer test.[8] However, while *Fitzsimmons* noted that

---

[8]In contrast, Kruger's refusal to take the Breathalyzer test is admissible against him under RCW 46.61.517, which provides:

The refusal of a person to submit to a test of the alcoholic content of the person's blood or breath under [the implied consent statute] is admissible into evidence at a subsequent criminal trial.

suppression is no real remedy where there is no tainted evidence to suppress, it did so only *after* holding that dismissal was required based on the "irreparable prejudice" rule of *Heater*. Thus, the remedy in *Fitzsimmons* does not turn on whether or not there is tainted evidence to be suppressed. Faced with an irreconcilable conflict in these two cases, we must decide which presents the most analytically sound basis.

Because of the unusual procedural history of *Fitzsimmons,* the value of its reasoning has been significantly diminished. Originally *Fitzsimmons* relied almost exclusively on the constitutionally based decision in *Heater*. Yet, on remand, the basis of *Fitzsimmons* was limited to a local court rule, thereby removing a substantial portion of the opinion's analytical justification. Given the elimination of much of its underlying rationale, *Fitzsimmons* hardly presents a convincing argument upon which to base the dismissal of a criminal case.

 Moreover, this court has repeatedly stated that "dismissal of charges is an extraordinary remedy available only when there has been prejudice to the rights of the accused which materially affected his or her rights to a fair trial." *Seattle v. Orwick,* 113 Wn.2d 823, 830, 784 P.2d 161

---

The words "or breath" were added in a 1987 amendment. However, that amendment is not of significance here because RCW 46.61.517 has always referenced a refusal to take a test as set forth in the implied consent statute, RCW 46.20.308. That statute, in turn, has referred to both blood and breath to determine the alcoholic content of a person's blood since it was enacted in 1969. Laws of 1969, ch. 1, § 1, p. 1.

Because the revocation of a driver's license under the implied consent statute is a civil administrative proceeding, "separate and distinct from the criminal proceedings which might ensue following the arrest of an offending motorist [for DWI]", *Gonzales v. Department of Licensing,* 112 Wn.2d 890, 900, 774 P.2d 1187 (1989) (quoting *Nowell v. Department of Motor Vehicles,* 83 Wn.2d 121, 124, 516 P.2d 205 (1973)), Kruger's refusal to take the Breathalyzer test may be used in revocation proceedings under RCW 46.20.308(6), despite its inadmissibility at his criminal trial. *Cf. Brewer v. Department of Motor Vehicles,* 23 Wn. App. 412, 415, 595 P.2d 949 (1979) (statements inadmissible in criminal trial because they were made in the absence of *Miranda* warnings may be used in revocation proceedings).

(1989), *cited in State v. Marks,* 114 Wn.2d 724, 730, 790 P.2d 138 (1990). *See also State v. Chavez,* 111 Wn.2d 548, 562–63, 761 P.2d 607 (1988) (citing *State v. Laureano,* 101 Wn.2d 745, 762, 682 P.2d 889 (1984), *partially overruled on other grounds in State v. Brown,* 113 Wn.2d 520, 782 P.2d 1013, 787 P.2d 906 (1989)); *State v. Whitney,* 96 Wn.2d 578, 580, 637 P.2d 956 (1981) (quoting *State v. Baker,* 78 Wn.2d 327, 332–33, 474 P.2d 254 (1970)). Further, dismissal is unwarranted in cases where suppression of evidence may eliminate whatever prejudice is caused by the infringement of the right of access to counsel. *Marks,* at 730 (citing *Orwick,* at 831). Given that dismissal of charges is an extraordinary remedy, *Fitzsimmons'* reliance on a presumption of prejudice to require dismissal of DWI charges is questionable, especially when such a presumption is not justified.

It is simply not true that irreparable prejudice must inevitably flow from a denial of counsel. As the dissent in *Heater* pointed out, denying a defendant immediate access to counsel does not mean that any and all exculpatory evidence is forever lost. Witnesses who observed the defendant's behavior prior to, and possibly during, the events leading up to the arrest can be called to testify. While there will not always be disinterested witnesses available, the same can be said for many circumstances where criminal charges are brought. Moreover, in those cases where prejudice does result from the violation of an accused's right to counsel, suppression of the tainted evidence will protect the rights of the accused to a fair trial.

Additionally, suppression of any evidence acquired after a violation will serve as an effective deterrent to police misconduct. Because a Breathalyzer reading of 0.10 is conclusive proof of guilt in a DWI charge,[9] police will want to

---

[9]RCW 46.61.502 provides, in part:

"A person is guilty of driving while under the influence of intoxicating liquor . . . if the person drives a vehicle within this state while:

"(1) The person has 0.10 grams or more of alcohol per two hundred ten liters of breath . . .".

ensure that the results of any Breathalyzer tests they administer will be admissible against the defendant.

Accordingly, we conclude that suppression of tainted evidence is the proper remedy for a violation of the right to counsel under JCrR 2.11. Support for our conclusion is found in other jurisdictions. *Copelin v. State,* 659 P.2d 1206 (Alaska 1983) (suppression of subsequently obtained evidence is proper remedy for denial of statutory right to counsel in DWI case), *cert. denied,* 469 U.S. 1017 (1984); *State v. Kelly,* 14 Kan. App. 2d 182, 786 P.2d 623, 630 (1990) (same, citing *Prok*); *State v. Broussard,* 517 So. 2d 1000 (La. Ct. App.) (suppression is proper remedy for violation of statutory and constitutional right to counsel), *writ denied,* 519 So. 2d 105 (1987); *People v. Gursey,* 22 N.Y.2d 224, 239 N.E.2d 351, 292 N.Y.S.2d 416 (1968) (suppression is proper remedy for violation of DWI defendant's right to counsel); *People v. Wilmot–Kay,* 134 Misc. 2d 1081, 514 N.Y.S.2d 313 (1987) (motion to suppress granted for violation of DWI defendant's right to counsel). *See also State v. Bunkers,* 310 Minn. 431, 247 N.W.2d 404 (1976) (results of breath test suppressed where police failed to accede to a timely request for an attorney prior to the breath test); *State v. Knoll,* 322 N.C. 535, 369 S.E.2d 558 (1988) (there is no per se rule of prejudice requiring dismissal of DWI case for denial of statutory right to counsel in DWI case; dismissal is only proper upon a showing of irreparable prejudice). *But see State v. Holland,* 147 Ariz. 453, 711 P.2d 592 (1985) (denial of statutory right to consult privately with attorney prior to breath test requires dismissal); *McNutt v. Superior Court,* 133 Ariz. 7, 648 P.2d 122 (1982) (dismissal is proper remedy for denial of right to counsel in DWI case).

Finally, the Legislature's 1983 amendments to Washington's drunk driving laws also support our conclusion that suppression is the proper remedy. The Legislature has mandated that Washington's drunk driving laws be strictly enforced, stating:

[P]roperty loss, injury, and death caused by drinking drivers have reached unacceptable levels. This act is intended to convey the seriousness with which the legislature views this problem. To that end the legislature seeks to insure swift and certain punishment for those who drink and drive. . . .

Laws of 1983, ch. 165, § 44, p. 758.

In summary, we conclude that the remedy for the denial of counsel in violation of JCrR 2.11 is suppression of any evidence acquired after the violation. Accordingly, *Fitzsimmons* is overruled insofar as it conflicts with this opinion. The dismissal of Kruger's DWI charge is reversed and the case is remanded with instructions to suppress any evidence obtained after he was denied counsel, including his refusal to take the Breathalyzer test.

CALLOW, C.J., and BRACHTENBACH, DOLLIVER, DORE, and GUY, JJ., concur.

UTTER, J. (dissenting)—I dissent. The majority overrules the holding of our unanimous decision in *State v. Fitzsimmons,* 93 Wn.2d 436, 610 P.2d 893, 18 A.L.R.4th 690, *vacated and remanded,* 449 U.S. 977, 66 L. Ed. 2d 240, 101 S. Ct. 390, *aff'd on remand,* 94 Wn.2d 858, 620 P.2d 999 (1980), and much of *Tacoma v. Heater,* 67 Wn.2d 733, 409 P.2d 867 (1966). Our unanimous decision in *State v. Prok,* 107 Wn.2d 153, 727 P.2d 652 (1986) distinguished *Fitzsimmons,* but did not overrule it. In cases where the right to counsel attaches prior to arrival at the police station, dismissal is the appropriate remedy for denial of that right. *State v. Fitzsimmons, supra.* In other cases, suppression may suffice. *State v. Prok, supra.* The opinion I authored for a unanimous court in *Prok* does not justify overruling either *Heater* or *Fitzsimmons.*

In *Heater,* we held that the right to counsel in a DWI case attaches no later than the moment when the police charge the defendant with the offense. Majority, at 141 (citing *Heater,* 67 Wn.2d at 739). We reasoned that this moment was a critical stage of the proceedings, because the "evidence of intoxication dissipates with the passage of

time." *Heater,* at 739. In particular, the failure to allow the defendant to immediately notify counsel deprived him of the opportunity to have a doctor administer a blood test at the moment of arrest. We reasoned that denial of the right to counsel at this critical stage is inherently prejudicial because it deprives the defendant of the ability to secure the most convincing kind of evidence of his sobriety. *Heater,* at 740. Accordingly, we dismissed the action against Heater. *Heater,* at 741.

In *Fitzsimmons,* we reaffirmed the holding that the right to counsel attached immediately after the moment of arrest and the rationale underlying it. *Fitzsimmons,* 93 Wn.2d at 442–43. We subsequently declared that *Fitzsimmons* was not of federal constitutional dimension, but that the rationale supporting our constitutional decision in *Heater* supported our interpretation of the court rule in *Fitzsimmons. Fitzsimmons,* 94 Wn.2d 858 (on remand). We also explained that *Heater* was based in part on state constitutional grounds. *Fitzsimmons,* 94 Wn.2d at 859. In *Fitzsimmons,* we held that the remedy for a violation of the right to counsel at the time of arrest is dismissal, as we had in *Heater. Fitzsimmons,* 93 Wn.2d at 451. In both *Fitzsimmons* and *Heater,* the right to counsel attached before the defendant arrived at the jail.

*Prok* presented a situation different from that present in *Heater* and *Fitzsimmons.* In the *Prok* case, the defendant passed out before being taken to the police station. Because of this the police could not have advised Prok of his right to counsel prior to Prok's arrival at the police station. *Prok,* at 156–57. Accordingly, we concluded that the right to counsel did not attach until after arrival at the police station. *Prok,* at 157.

We unanimously agreed that the fact that the right to counsel did not attach until after arrival at the police station distinguished this case from *Heater* and *Fitzsimmons,* because in *Heater* and *Fitzsimmons* the right attached upon arrest on the highway. *Prok,* at 157. In this case, the right to counsel attached upon arrest on the highway.

Majority, at 139. Accordingly, *Fitzsimmons* governs this case and requires dismissal of the charges.

The rationales underlying dismissal in *Heater* and *Fitzsimmons* support dismissal more strongly when the right to counsel attaches on the highway than when the right attaches after arrival at the jail. If the defendant passes out and makes it impossible to advise him of the right to counsel on the highway, the defendant, not the police, deprives the defendant's lawyer of the opportunity to have an immediate blood alcohol test and to interview witnesses on the scene. Therefore, the need to dismiss in order to protect defense counsel's opportunities is substantially less.

The majority now finds the distinction we found tenable in *Prok* untenable. The majority's theory that the distinction drawn in *Prok* was untenable cannot justify overruling *Fitzsimmons,* although it might justify overruling *Prok.*

We cannot overrule *Fitzsimmons,* because doing so conflicts with the rationale supporting the court rule at issue in this case. We explained in *Heater* that in DWI cases the right to counsel attaches upon arrest on the highway, because the evidence of drunkenness dissipates so rapidly. That justified identifying the moment of arrest as a critical stage of proceedings to which the right to counsel attaches. This requirement that the right to counsel attach at the moment of arrest has since been incorporated in court rules. *State ex rel. Juckett v. Evergreen Dist. Court,* 100 Wn.2d 824, 830–31, 675 P.2d 599 (1984) (right to counsel attaches upon arrest under former JCrR 2.11(c)).

We must provide a remedy consistent with the case developing the rationale which now supports our court rules, *Tacoma v. Heater, supra.* As we explained in *Heater,* depriving defense counsel of the opportunity to obtain the best evidence of sobriety through a blood test is inherently prejudicial and results in dismissal. The extraordinary remedy of dismissal of charges is appropriate when there has been prejudice to the rights of the accused which materially affected his or her rights to a fair trial. Majority, at 144. Deprivation of the right of counsel at the moment of

arrest in a DWI case is inherently prejudicial because it deprives defense counsel of the opportunity to get an immediate blood test.

The majority's reasons for overruling *Fitzsimmons* and a major part of *Heater* are not persuasive. We may not eviscerate the right of counsel under the court rule to accommodate the Legislature's legitimate desire to punish drunk drivers. *Cf.* majority, at 146–47. Defendants will never go free under the rule unless the police fail to follow a clear rule requiring them to advise defendants of their right to counsel upon arrest.

Nor should we, at this late date, reconsider our decision in *Heater,* which underlies the court rule we have followed for many years. The majority argues that denial of the right to counsel does not necessarily result in the loss of all exculpatory evidence. Majority, at 141, 145 (citing *Heater,* at 767 (Hamilton, J., dissenting)). The *Heater* majority did not deny that this contention of the dissent was correct. But we insisted, in *Heater,* that the loss of an opportunity to get an independent blood alcohol test was of paramount importance. *Heater,* at 739–41. This justified both the holding that the right to counsel attaches upon arrest and the holding, followed in *Fitzsimmons* and the Court of Appeals in this case, that the remedy for violation of the rule is dismissal. Suppression of the State's evidence does not cure the failure to allow the defendant the opportunity to get exculpatory evidence which dissipates shortly after arrest. *Cf.* majority, at 145.

The majority claims that our decision that *Fitzsimmons* interprets a court rule and the state constitution, rather than the Sixth Amendment, somehow undermines its reasoning. Majority, at 144. Yet the rule given constitutional status in *Heater* is the same rule now embodied in our court rule. The reasoning for the rule does not lose its force because the source of the right changes.

Our holding in *Prok* is too narrow to justify overruling *Fitzsimmons.* In *Prok,* the state trooper did not violate the rule at issue in *Heater, Fitzsimmons,* and in this case,

former JCrR 2.11(c)(2), current CrRLJ 3.1(c)(2). Rather, the trooper violated a phrase of JCrR 2.11(c)(1) requiring advisement of the right to counsel "'in words easily understood'". *Prok,* at 155. Accordingly, our conclusion that dismissal is inappropriate where there is credible untainted evidence acquired prior to the violation must be confined to violations of the rule at issue in that case. "[G]eneral expressions in every opinion are to be confined to the facts then before the court" and are "limited in their relation to the case then decided and to the points actually involved." *Peterson v. Hagan,* 56 Wn.2d 48, 53, 351 P.2d 127 (1960) (citing *Cohens v. Virginia,* 19 U.S. 264, 5 L. Ed. 257 (1821) and five of our cases). We also distinguished *Fitzsimmons,* thereby clearly indicating that we did not intend to overrule it. The particular distinction we drew indicated that our holding in *Prok* would be confined to cases where special circumstances kept the right to counsel from attaching prior to arrival at the jail.

I would therefore reaffirm *Heater* and *Fitzsimmons,* the cases governing administration of CrRLJ 3.1(c)(2) prior to arrival at the station. The underpinning for the rule requires no less. I would, however, overrule *Evergreen,* insofar as it implied that defendant Marquez was not entitled to dismissal. *See Evergreen,* 100 Wn.2d at 831. In *Evergreen,* we ordered suppression of the evidence obtained after denial of the right to counsel without discussing dismissal or the remedial holding of *Heater* or *Fitzsimmons.* The doubt created by this disposition led to the difficulties we experienced in *Prok. See State v. Prok,* 42 Wn. App. 166, 709 P.2d 401 (1985) (majority and dissent disagreeing about the implications of *Evergreen*), *rev'd,* 107 Wn.2d 153, 727 P.2d 652 (1986). The majority's assertion that *Prok* is in some tension with *Fitzsimmons* has some merit. Since the facts of this case fall squarely within the remedial rule established in *Fitzsimmons* and *Heater,* I see no need to overrule *Prok* in this case. Properly understood, *Prok* has no bearing on this case.

We should dismiss the case in accordance with our holdings in *Heater* and *Fitzsimmons*.

ANDERSEN, J. (dissenting)—I would affirm the Superior Court's dismissal of the charges against the defendant, as did the Court of Appeals in its unpublished opinion. Both of those decisions followed the well settled law as enunciated by this court.

It may well be that the defendant was falling down drunk, as the State's evidence would indicate, but it may also be that he was ill. While the former seems more likely in this case, the point is that it *could have been* the latter— and it also could be the latter in any number of cases which have yet to arise. In this case, as well as in similar future cases, we shall never know the answer for certain because of the absence of a Breathalyzer or other blood alcohol test.

Our rules of court are specific and unambiguous, "*a person in custody who desires counsel shall be provided access to a telephone, the telephone number of the public defender or other official responsible for assigning counsel*". (Italics mine.) Former JCrR 2.11(c)(2).[10] The police violated this clearly stated rule. The defendant asked for a lawyer, a telephone was nearby and the police had the public defender's 24-hour phone number—yet the police declined to provide it.

Granted, the defendant refused the opportunity to take the blood alcohol test offered by police. But had the defendant been provided access to counsel in accordance with the requirements of the rule, counsel could have arranged for an independent Breathalyzer or other blood alcohol test. It is this *opportunity* which the police effectively took from the defendant. As we have declared in the past, "[w]hile the law enforcement authorities have no duty to volunteer to arrange for testing, they must not thwart an accused's attempts to make such arrangements." *Blaine v. Suess*, 93 Wn.2d 722, 728, 612 P.2d 789 (1980).

---

[10]This rule is now CrRLJ 3.1(c)(2). *See also* CrR 3.1(c)(2).

I also agree with the Superior Court and the Court of Appeals that dismissal is the proper remedy for this rule violation. In my view, the following excerpts from the unpublished opinion of the Court of Appeals in this case correctly state the applicable law.[11] As Judge Munson, writing for that court, explained:

> Mr. Kruger relies on *State v. Fitzsimmons,* 93 Wn.2d 436, 445, 610 P.2d 893, *vacated,* 449 U.S. 977, 66 L. Ed. 2d 240, 101 S. Ct. 390, *aff'd,* 94 Wn.2d 858, 620 P.2d 999 (1980), in which the court, relying upon *Tacoma v. Heater,* 67 Wn.2d 733, 741, 409 P.2d 867 (1966), held that when the error is not harmless, dismissal was the proper remedy for denial of access to counsel under former JCrR 2.11 in a DWI case because
>
>> the period immediately after arrest and charging in a driving while under the influence of intoxicating liquor case is a "critical stage" because of the unique character of the evidence to be obtained and the trial strategy decisions which must be made then, if at all. . . .
>
> . . . .
>
> Here, the officers' failure to provide Mr. Kruger the public defender's telephone number clearly denied him access to a lawyer. He, thus, was without counsel in deciding . . . whether to submit to additional, possibly exculpatory, tests. *These potential defenses were forever lost and dismissal is warranted under the Fitzsimmons rationale.*[12]

(Italics mine.)

I would affirm the Superior Court's dismissal.

SMITH, J., concurs with ANDERSEN, J.

---

[11] *Spokane v. Kruger,* 54 Wn. App. 1048 (1989).

[12] *See also Seattle v. Orwick,* 113 Wn.2d 823, 784 P.2d 161 (1989).