[No. 56671-2. En Banc. May 3, 1990.]

THE STATE OF WASHINGTON, ET AL, *Appellants*, v. GROVER PHILLIP MARKS, ET AL, *Respondents*.

*Donald C. Brockett, Prosecuting Attorney,* and *Patricia A. Thompson, Deputy,* for appellant State.

*James C. Sloane, City Attorney,* and *Rocco N. Treppiedi, Assistant,* for appellant Spokane.

*Leroy C. Kinnie,* for respondents James Senator Marks and Jane Marks.

*Mark E. Vovos,* for respondents Grover Marks and Marie Marks.

Dore, J.—The Spokane trial court held that the police exceeded authorization in search warrants and conducted an illegal search in which they confiscated money and hundreds of items of property. The court suppressed all seized evidence, dismissed the underlying criminal charges, and ordered the police to return all confiscated property to the defendants. The State accepted the suppression ruling but objected to the order of dismissal and return of property to defendants, rather than to third parties who claimed ownership interest in the property.

We partially reverse and hold that the court shall conduct an evidentiary hearing to determine who has the superior right to possession of the remaining seized property now located in the Spokane Police Department's property room. We also reinstate the dismissed charges against defendants but prohibit the State from using the tainted evidence, previously suppressed in this proceeding, in attempting to prove its case.

## FACTS

The Spokane Police Department and Sheriff's office received information that defendants were involved in buying and selling stolen property. They employed the services of a young informant who had confessed to selling large quantities of stolen property to the defendants, two families living at South 428 and 802 Thor in Spokane, Washington. On three different occasions, between June 10, 1986 and June 17, 1986, the informant made contact with the defendants under the direction of the police. During these contacts, the informant sold property to the defendants which he indicated was stolen. During two of these contacts the informant was "wired" with a listening device which was court authorized, and the transactions were video-

taped.[1] On June 18, 1986, another operation was set up by the police for the informant to make a sale to defendants. At approximately 10 a.m., the informant went to the residence of James and Jane Marks at South 802 Thor to sell property. The informant, however, reported back to the police that the resident was not interested and apparently knew it was a "setup". The police, feeling their investigation had been compromised, aborted the attempted sale. The officers then prepared search warrants for both residences. The search warrants were signed by a judge at approximately 3:10 p.m. and delivered to each residence at approximately 3:30 p.m.

The police conducted a general search of the homes, as well as searching all individuals who were inside the respective residences. All items of jewelry worn by the children, women and men, including rings, watches, bracelets, and even gold fingernails, were removed and confiscated by the police conducting the search. During the course of the search, several thousand items were found as well as a large amount of cash. The police did not check the search warrants to determine whether they had the authority to make such a sweeping search. In fact, none of the officers conducting the search saw a copy of the search warrants prior to searching the premises. Not only did the police fail to read the search warrants, there is strong evidence in the record indicating that the police began searching the defendants' homes before the warrants were issued. Memorandum opinion, at 7. For example, the officers videotaped much of the seized property before removing it from the residences. A watch is shown in the police videotape made at South 428 Thor. This watch shows the time of 1:07. It was evident from the videotape that the watch was operating. In addition, an ambulance was called to the defendant's residence *at 2:56 p.m.,* on June 18, 1986. An officer

---

[1]The informant never personally testified to these sales. However, the trial judge in his memorandum opinion acknowledged that the informant was able to effect sales to the defendants. Clerk's Papers, at 237.

testified that the ambulance was called when the search was *nearly completed* to deal with the physical problems experienced by some of the occupants of the defendant's house. Memorandum opinion, at 4–6. The search warrants itemized only 57 items of property to be seized and did not specify that cash was to be taken. However, approximately 200 items of personal property were seized at South 802 Thor, and approximately 440 items, including seven canisters of money, were removed from South 428 Thor. Approximately $1.6 million was counted by the police. No inventory or receipt for any property or money seized was left with any of the defendants or anyone at their residences. Many items that were confiscated by the police officers were inaccurately identified and lost. There is doubt as to the identity of items taken and the whereabouts of large sums of cash.

On December 18, 1986, defendants were charged with trafficking in stolen property in the first degree. On June 26, 1986, Judge Raymond R. Tanksley, Jr., ordered the return of the approximately $1.6 million in cash that had been seized from the residence of South 428 Thor. In July 1986, the Spokane Police Department, without any court order or approval and in an attempt to have possibly stolen items identified, held a public viewing of items of jewelry seized on June 18, 1986. While the public had a chance to view the seized property, the defendants were denied such an opportunity.

In November 1987, Judge Murphy conducted a hearing on defendants' motion for return of the seized property. Every piece of property that was seized was brought before the hearing. The court ordered the State to return to the defendants all property that had not been identified as stolen. As to those items that had been characterized as stolen, the court found that they were "subject to further proceedings." Clerk's Papers, at 43.

On May 13, 1988, the defendants moved for an order "suppressing all evidence seized in this case and for dismissal of all charges . . .". Clerk's Papers, at 47. Judge

Schultheis conducted a hearing from May 31, 1988 to June 29, 1988. In its memorandum opinion of September 14, 1988, the court held the police had exceeded the authority of the search warrants and had confiscated hundreds of items that were not set forth in the search warrants. Finding of fact 21. It also determined that the police were guilty of mismanagement and governmental misconduct. Accordingly, the court granted the defendants' motion to suppress and dismiss all charges.

At a hearing on November 8, 1988, the defendants requested the court to order the State to return the remaining property, being held in the police property room, that was seized on June 18, 1986. The only property retained by the State at this time was alleged to be the product of burglaries, subject to third party claims. The prosecuting attorney objected and argued that a hearing should be held to determine the ownership of the property. The court held that no hearing was necessary since the court had suppressed the evidence and had granted defendants' motion to dismiss.

Subsequent to the court's ruling, the city attorney ordered the property room not to return the property to the defendants. In response to the City's action, the defendants made a motion to have the City and/or County of Spokane held in contempt. A hearing was held on November 22, 1988. The State submitted an affidavit demonstrating that at least 37 claimants had identified the property in dispute. The court ordered the return of the property to defendants unless the claimants listed in the State's affidavit filed a civil claim against the defendants. On December 9, 1988, the court entered its formal order dismissing the case pursuant to CrR 8.3(b) and another suppressing the evidence. Neither the State nor the City appealed the order suppressing the evidence. They did appeal, however, the order dismissing the case and the order directing the return of the property to the defendants without an evidentiary hearing. We accepted certification.

# I
## Suppression of the Evidence, Not Dismissal, Is the Proper Remedy When Credible Untainted Evidence Is Acquired Prior to a Violation

On appeal, error is assigned to the court's order of dismissal:

> It is ordered that this matter is hereby dismissed pursuant to CrR 8.3(b) as set out in the Findings of Fact and Conclusions of Law.

Clerk's Papers, at 323.[2]

Our recent case of *Seattle v. Orwick,* 113 Wn.2d 823, 784 P.2d 161 (1989) controls the outcome of the dismissal issue. In *Orwick,* we held dismissal of charges pursuant to CrR 8.3(b) is an extraordinary remedy that can be exercised only when "there has been prejudice to the rights of the accused which materially affect[s] his or her rights to a fair trial." *Orwick,* at 830. If the defendant has not been prejudiced by governmental misconduct, dismissal will not be required. *Orwick,* at 831; *State v. Baker,* 78 Wn.2d 327, 474 P.2d 254 (1970).

Dismissal is unwarranted in cases where suppression of evidence may eliminate whatever prejudice is caused by governmental misconduct. *Orwick,* at 831 (citing *State v. Grant,* 9 Wn. App. 260, 511 P.2d 1013, *review denied,* 83 Wn.2d 1003 (1973)). In *Grant,* the court, in upholding the trial court's denial of dismissal, held that the suppression of an illegal tape demonstrated an absence of any prejudice to the defendant. Consistent with this view, the United States Supreme Court has not suggested "that searches and seizures contrary to the Fourth Amendment warrant dismissal of the indictment. The remedy in the criminal proceeding is limited to denying the prosecution the fruits of its transgression." *United States v. Morrison,* 449 U.S. 361, 366, 66 L. Ed. 2d 564, 101 S. Ct. 665, *reh'g denied,* 450 U.S. 960

---

[2]Under CrR 8.3(b), "[t]he court on its own motion in the furtherance of justice, after notice and hearing, may dismiss any criminal prosecution and shall set forth its reasons in a written order."

(1981); *see also United States v. Blue,* 384 U.S. 251, 255, 16 L. Ed. 2d 510, 86 S. Ct. 1416 (1966) (remedy does not extend to barring the prosecution altogether).

Dismissal is also inappropriate when there is credible and admissible evidence obtained against the defendant that is untainted by the governmental misconduct. *See Orwick,* at 829; *State v. Prok,* 107 Wn.2d 153, 157, 727 P.2d 652 (1986). In *Prok,* the defendant was charged with driving while intoxicated. The trial court dismissed the charges based upon failure of the police to advise the defendant of his right to counsel when he was taken into custody. In reversing the dismissal, this court held that the evidence obtained against the defendant, before his right to counsel was violated, was admissible and that, because of the admissibility of such evidence, dismissal was inappropriate. *Prok,* at 157.

In their briefs, the defendants here did not make any showing of prejudice, nor did the trial court make any specific finding of prejudice. The trial court's findings and conclusions focus on the misconduct of the police in carrying out the search of defendants' residences:

> The joint City–County Task Force consisting of members of the Spokane Police Department and the Spokane County Sheriff's Office, mismanaged the entire search and seizure of the residences at South 802 Thor and South 428 Thor to such an extent as to exhibit gross mismanagement, and governmental misconduct, and a reckless disregard for the rights of the defendants.

Clerk's Papers, at 268–69. Finding of fact 21. The court concluded that such conduct by the police "vitiate[d] the entire procedure." Clerk's Papers, at 271. Conclusion of law 7. The prejudice alluded to here concerns the illegal search and seizure *procedure*; it does not claim the entire *prosecution* is vitiated. Another conclusion of law asserts that the actions of the police "in the conduct of the searches and seizures in this case, deprived the defendants of due process . . .". Clerk's Papers, at 271. Again the prejudice alluded to here relates strictly to the illegal search and seizure.

Any possible prejudice resulting from the improper search and seizure procedure has been handled by the suppression of the evidence seized in the search. Because the court suppressed all evidence obtained during the illegal search, a fair trial can still be held based on untainted evidence which was not acquired in the illegal search.

Because the defendants have not made a showing that they were prejudiced by the governmental misconduct in this case, the dismissal by the trial court under CrR 8.3(b) was inappropriate. In arriving at our conclusion, we do not condone the egregious behavior of the Spokane Police and Sheriff's offices. We simply conclude that dismissal is an improper remedy where the evidence from the illegal search has been suppressed, and the violation has no impact on the criminal proceedings.

## II
### EVIDENTIARY HEARING IS REQUIRED BEFORE PROPERTY CAN BE RETURNED TO DEFENDANTS PURSUANT TO CrR 2.3(e)

The State assigns error to the trial court's rulings that an evidentiary hearing is not required before the police return the allegedly stolen property to the defendants. RCW 10.79.050 requires the police to return all stolen property to the owner.[3] However, a person aggrieved by an unlawful search and seizure may move the court, pursuant to CrR 2.3(e),[4] for the return of the property on the basis (1) the property was "illegally seized", and (2) the movant is "lawfully entitled to possession".

---

[3] RCW 10.79.050 provides:

"**Restoration of stolen property to owner—Duties of officers.** All property obtained by larceny, robbery or burglary, shall be restored to the owner; and no sale, whether in good faith on the part of the purchaser or not, shall divest the owner of his rights to such property; and it shall be the duty of the officer who shall arrest any person charged as principal or accessory in any robbery or larceny, to secure the property alleged to have been stolen, and he shall be answerable for the same, and shall annex a schedule thereof to his return of the warrant."

[4] CrR 2.3(e) provides in relevant part: "A person aggrieved by an unlawful search and seizure may move the court for the return of the property on the

*State ex rel. Schillberg v. Everett Dist. Justice Court,* 90 Wn.2d 794, 798–99, 585 P.2d 1177 (1978) construed former JCrR 2.10(e), which had substantially the same wording as CrR 2.3(e).[5]

In *Schillberg,* the defendant was arrested for possession of stolen property but was never charged. The defendant moved the court for the return of the property which was unlawfully seized at the time of his arrest. The District Court ordered the return of the merchandise. The Superior Court reversed the District Court because it found the rule which permits a defendant to petition for return of illegally seized property violated procedural due process requirements with respect to third persons who might have a superior right to possession. This court affirmed the reversal of the District Court but on different grounds. We found procedural due process was *not* violated because the hearing held pursuant to the court rule did not adjudicate title to the property. *Schillberg,* at 798–99.

Nonetheless, this court found that the property should not be returned to the defendant because he failed to meet his burden under the rule. *Schillberg* interpreted the language now used in CrR 2.3(e) to require the defendant to

> prove not only that the search and seizure was illegal, but also that he is lawfully entitled to possession of the property seized. *This means that he must offer proof sufficient to satisfy the court of his right to possession.*

(Italics ours.) *Schillberg,* at 797–98.

---

ground that the property was illegally seized and that the person is lawfully entitled to possession thereof. If the motion is granted the property shall be returned."

[5]Former "JCrR 2.10(e) provide[d]:

". . . A person aggrieved by an unlawful search and seizure may move the court for the return of the property on the ground that the property was illegally seized and that he is lawfully entitled to possession thereof. If the motion is granted, the property shall be returned. If a motion for return of property is made or comes on for hearing after an indictment or information is filed in the court in which the motion is pending, it shall be treated as a motion to suppress." *Schillberg,* at 796–97.

The Court of Appeals applied the rules set forth in *Schillberg* to CrR 2.3(e) motions. In *State v. Card,* 48 Wn. App. 781, 741 P.2d 65 (1987), the defendant pleaded guilty to possession of stolen property. The trial court, on defendant's motion to return all property not claimed by crime victims, ordered the return of the property to the defendant. In reversing the trial court, *Card* held that CrR 2.3(e) requires an evidentiary hearing. That requirement was not satisfied in *Card* because no affidavits were filed by the State or defendants, and no other evidence was taken in the form of testimony. The appellate court remanded the case for an evidentiary hearing.

*Card* further mapped out the rules for a CrR 2.3(e) motion by rejecting the State's contention that the defendant has the initial burden of proof. *Card* found the facts of *Schillberg* undermined the State's position. In *Schillberg,* the State made a "substantial showing" that the property had been stolen. Since the issue of who had the initial burden had not specifically been addressed by any Washington cases, *Card* looked to the federal courts for guidance. *Card* relied on *United States v. Wright,* 610 F.2d 930 (D.C. Cir. 1979), to hold the initial burden of proof lies on the State in a CrR 2.3(e) hearing. In *Wright,* the court held:

> The seizure of property *from someone* is *prima facie* evidence of that person's entitlement . . . The whole thrust of the cases that we have cited is that when property is seized from a person, the court must return it to that person when it is no longer needed by the government. The court is obligated to restore the *status quo ante.* Unless there are *serious reasons* (presented by the government or adverse claimants) to doubt a person's right to the property seized from him, he need not come forward with additional evidence of ownership.

(Footnotes omitted. Some italics ours.) *Wright,* at 939. The approach in *Wright* was adopted to protect the claimant's property interest by placing the burden initially on the State to show the seized property is the product of a crime. *Card,* at 790.

In sum, *Card* and *Schillberg,* by analogy, set forth the following guidelines for a CrR 2.3(e) motion:

1. An evidentiary hearing is required under CrR 2.3(e) where the State and the defendant can offer evidence of their claimed right to possession;

2. The purpose of this hearing is to determine the right to possession as between the State and the defendant;

3. The State has the initial burden of proof to show right to possession;

4. Thereafter, the defendant must come forward with sufficient facts to convince the court of his right to possession. If such a showing is not made, it is the court's duty to deny the motion.

Here, the trial court, notwithstanding the detailed affidavit of the State demonstrating that a significant portion of the property was stolen, and notwithstanding a complete absence of any evidence by the defendants, ordered the return of the property to the defendants unless the *victims* listed in the State's affidavit file a civil cause of action against the defendants. This order conflicts with the guidelines set forth above.

First, the trial court's order fails to provide for an evidentiary hearing between the State and the defendants. Apparently, Judge Schultheis felt that such a hearing would be "an impossible job" and was not necessary in light of the fact that the court suppressed the evidence and dismissed the case. Report of Proceedings, at 75. However, the fact that defendant was never charged in *Schillberg* did not preclude the court there from requiring an evidentiary hearing. Furthermore, Judge Murphy specifically required the property in this appeal to be subject to "further proceedings when witnesses will or will not formally testify as to the State's position on those items." Clerk's Papers, at 43.

Second, the court's order also absolves defendants of their burden to prove that they are "lawfully entitled" to possession of the seized property. The order improperly places the burden on third parties to file civil lawsuits. *Schillberg* and other federal cases hold that if ownership is disputed, the *defendant* must resort to a civil remedy to

establish his claim. *Schillberg,* at 798 (citing *United States v. Scott,* 149 F. Supp. 837 (D.D.C. 1957)).

Finally, the trial court's order conflicts with RCW 10.79-.050 which requires the police to return stolen property to the owners. On the one hand the State is ordered by the court to return the allegedly stolen property to defendants; yet, on the other hand, the State is required by statute to return stolen property to the owner. An evidentiary hearing determining who has the lawful right to possession of the disputed property as between the State and the defendants relieves the conflict between CrR 2.3(e) and RCW 10.79-.050.

Because the procedures outlined in CrR 2.3(e), *Schillberg* and *Card* were not followed, we reverse and remand for a CrR 2.3(e) hearing. Only if the State can make a substantial showing that the property is stolen, will the defendants be required to show the court sufficient facts of their right to possession.

## CONCLUSION

1. We reverse the trial court's order of dismissal and reinstate the State's case against the defendants. Any prejudice to the defendants was eliminated by the court's order to suppress all seized evidence in the illegal search. The case may proceed to trial on any untainted evidence not seized and/or confiscated in the illegal search.

2. We remand the property matter to the trial court for an evidentiary hearing to determine who has the superior right to possession of the subject property presently located in the property room of the Spokane Police Department.

CALLOW, C.J., and UTTER, BRACHTENBACH, DOLLIVER, DURHAM, SMITH, and GUY, JJ., concur.

ANDERSEN, J., concurs in the result.