IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 79661-5-I |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| LAYNE ELLIOTT HUBER, | ) | UNPUBLISHED OPINION |
| Appellant. | ) | FILED: August 12, 2019 |

SMITH, J. — Layne Huber appeals the trial court's denial of his CrR 2.3(e) motion for the return of property seized during a 2011 search. Although officers seized hundreds of items during the search, the only items at issue in this appeal are items later identified as stolen by burglary victims who attended a property viewing conducted by law enforcement in August 2011. Because Huber failed to prove that he was entitled to possession of those items, the trial court properly denied Huber's CrR 2.3(e) motion. But because the purpose of the CrR 2.3(e) hearing was to determine the right to possession solely as between Huber and the State, the trial court erred by further concluding that the items at issue could be returned to third party victims. Therefore, we affirm in part, reverse in part, and remand to the trial court to vacate its conclusion that "[b]ased on the totality of the evidence, [t]he State has shown sufficient proof that the stolen items can be returned back to the victims."

FACTS

In June 2011, officers from the Lacey Police Department (Lacey PD) and the Thurston County Sheriff's Office (TCSO) conducted a search of Huber's home in Olympia. Huber's home is also the location of his company, Off-It Inc., which buys and sells used goods. The search was conducted pursuant to two warrants. The probable cause affidavit for the first warrant stated that in May 2011, officers arrested a man named Kirk Morlan on suspicion of "numerous frauds and possession of stolen property." According to the affidavit, Morlan told officers that he "wanted to 'come clean'" and then took officers to more than 35 locations that he claimed to have burglarized. He also told officers that he would take the property he stole primarily to two people—one of whom was Huber. The probable cause affidavit stated that Morlan also told officers that Huber was his marijuana supplier and Morlan believed that Huber was growing marijuana in a "big shop" on his property.

Officers seized hundreds of items during the search, and on June 29, 2011, Huber was charged with unlawful manufacture and possession of marijuana.

In August 2011, Lacey PD and TCSO held a property viewing where items seized during the June 2011 search were displayed for identification purposes. Tim Arnold, a TCSO detective who was involved in the viewing, later described the setup for the viewing as follows:

> The items were laid out in an area secured by fencing, cameras and a separate alarm system. This area was established in a TCSO facility that also was alarmed separately. The property was photographed and categorized prior to the viewing dates. Smaller

2

items such as jewelry were grouped into photographs. Computers were then set up outside the inner secure perimeter, so that individuals could view the photographs in an effort to identify any of their stolen items. In order for access to be granted to the viewing area, citizens needed to provide picture identification, a case number for their original theft event, as well as a list of the items they were attempting to identify and recover.

The viewing was held over four days, with the first two days reserved for victims of burglaries committed by Morlan. Emily Liening, a Lacey PD evidence custodian who was familiar with the types of property seized from Huber, was at the viewing and screened all potential victims. She later testified that

> [p]otential victims were told to provide a case or incident number and were asked questions about the type(s) of property they were missing. If an individual was unable to provide a case number, or their date of loss was after the search warrant had been executed, or the property they described did not match anything in the viewing they were not permitted to enter the facility or view any property.

Liening also "testified that only individuals who provided a police report/police agency case number, proper identification, and items that were of similar character to items seized from Mr. Huber during the search warrant were allowed to actually view the property."

Arnold estimated that 250 people who came to the viewing were granted some kind of access. Those who identified items as belonging to them signed paperwork to document the specific items they identified.

In September 2012, Huber moved to suppress "all evidence" in his case. He argued that the warrants executed in June 2011 were not supported by probable cause, the information that the officers received from Morlan was not sufficiently contemporaneous or fact-specific, and the officers executing the June 2011 search failed to serve Huber with any warrant. It does not appear from the

3

record that the trial court ever ruled on Huber's motion.

On December 10, 2013, the court, on the State's motion, dismissed all charges against Huber with prejudice because the lead detective on Huber's case had passed away.

In July 2014, Huber moved pro se under CrR 2.3(e) for the return of property seized from his home during the June 2011 search. The State responded to Huber's motion in March of 2017.[1] In support of its response, the State submitted declarations from Arnold and Liening in which they described the August 2011 property viewing.

In May 2017, after additional briefing from the State and from Huber, who had retained counsel, the trial court held an evidentiary hearing on Huber's CrR 2.3(e) motion. Both Liening and Arnold testified at the hearing and described the August 2011 property viewing. Additionally, the court admitted into evidence the "Property Identification" forms that were completed for individuals who identified items at the property viewing and a master list, later compiled by law enforcement, of the 28 victims who identified items at the viewing, along with descriptions of items identified.

After the hearing, the court denied Huber's motion and entered findings of fact and conclusions of law. The court concluded that "[b]ased on the totality of the evidence, [t]he State has shown sufficient proof that the stolen items can be returned back to the victims" and that "[t]he documents that Mr. Huber have [sic]

---

[1] The reason for the State's delay in responding to Huber's motion is not clear from the record.

provided to this Court are not sufficient proof that he has the right to possession of the items that were stolen from the 28 victims" who identified stolen property at the property viewing.

Huber moved for reconsideration, arguing that the court's denial of his motion amounted to an unconstitutional taking of property without due process, and that the State was required to follow the statutory forfeiture process. The trial court denied Huber's motion for reconsideration. Huber appeals.

ANALYSIS

Denial of Motion for Return of Property

Huber argues that the trial court erred by denying his CrR 2.3(e) motion. Because the trial court's unchallenged findings support its conclusion that Huber was not entitled to possession of the items identified as stolen at the August 2011 property viewing, the trial court did not err by denying Huber's motion. That said, because a CrR 2.3(e) hearing adjudicates the right to possession solely as between the defendant and the State, the trial court did err by concluding that "[t]he State has shown sufficient proof that the stolen items can be returned back to the victims."

"Where the trial court has weighed the evidence, appellate review is ordinarily limited to determining whether the trial court's findings are supported by substantial evidence and, if so, whether the findings in turn support the conclusions of law." City of Walla Walla v. $401,333.44, 164 Wn. App. 236, 255-56, 258-59, 262 P.3d 1239 (2011) (applying substantial evidence review to trial court's denial of CrR 2.3(e) motion). Here, although Huber assigns error to the

5

trial court's denial of his motion, he does not assign error to any of the trial court's findings of fact. See State v. Roggenkamp, 115 Wn. App. 927, 943, 64 P.3d 92 (2003) (general assignment of error insufficient to comply with RAP 10.3(g), which requires a separate assignment of error for each finding that a party contends was improperly made), aff'd, 153 Wn.2d 614, 106 P.3d 196 (2005). Therefore, the trial court's findings "become the established facts of the case" and "[t]he appellate court's function is . . . limited to determining whether the findings of fact support the court's conclusions of law." Roggenkamp, 115 Wn. App. at 943-44. We review de novo whether the trial court's findings support its conclusions of law. State v. Rooney, 190 Wn. App. 653, 658, 360 P.3d 913 (2015).

CrR 2.3(e) provides, "A person aggrieved by an unlawful search and seizure may move the court for the return of the property on the ground that the property was illegally seized and that the person is lawfully entitled to possession thereof." Although the rule expressly refers only to *unlawful* searches and seizures, Washington courts also apply the rule to motions for return of property that was *lawfully* seized but no longer needed for evidence. State v. Alaway, 64 Wn. App. 796, 798, 828 P.2d 591 (1992).

In State v. Marks, our Supreme Court set forth the following four "guidelines" for consideration of a CrR 2.3(e) motion:

> 1. An evidentiary hearing is required under CrR 2.3(e) where the State and the defendant can offer evidence of their claimed right to possession;
> 2. The purpose of this hearing is to determine the right to possession as between the State and the defendant;
> 3. The State has the initial burden of proof to show right to

6

possession;
       4. Thereafter, the defendant must come forward with sufficient facts to convince the court of his right to possession. If such a showing is not made, it is the court's duty to deny the motion.

114 Wn.2d 724, 734-35, 790 P.2d 138 (1990). The State bears the initial burden of proof because "'[t]he seizure of property *from someone* is *prima facie* evidence of that person's entitlement.'" Marks, 114 Wn.2d at 734 (quoting United States v. Wright, 610 F.2d 930, 939 (D.C. Cir. 1979)).

Although CrR 2.3(e) does not provide any criteria for determining whether the State has a superior right to possession, Washington courts have held that the State can meet its initial burden of proving its right to possession by showing that "(1) the defendant is not the rightful owner; (2) the property is contraband; or (3) the property is subject to forfeiture pursuant to statute." Alaway, 64 Wn. App. at 798. The State can also meet its burden by proving by a preponderance of the evidence that the property is stolen property. State v. Card, 48 Wn. App. 781, 790, 741 P.2d 65 (1987).

Here, the trial court properly concluded that the State met its initial burden. Specifically, the trial court found that since the initial June 2011 seizure, "numerous items have already been returned to Mr. Huber" and that the items remaining (other than the marijuana) are the ones identified as stolen in August 2011 at the property viewing. The trial court found that the property viewing was open to the public, but also found that Liening testified that individuals were only permitted to view items if they (1) provided proper identification, (2) provided either a police report documenting that they were a victim of a burglary or a

7

police agency case number, and (3) indicated that they had items stolen from them that were similar in character to the items seized from Huber.[2] Additionally, the trial court found that individuals who identified items as being stolen from them were required to sign paperwork documenting the specific item or items identified. These unchallenged findings support the trial court's conclusion that the State satisfied its initial burden to prove its right to possession of the items identified as stolen at the August 2011 property viewing. See Card, 48 Wn. App. at 790 (State can satisfy initial burden by proving by a preponderance of the evidence that the property at issue is stolen).

Once the State satisfied its initial burden, Huber was obligated to "come forward with sufficient facts to convince the court of his right to possession." Marks, 114 Wn.2d at 735. To that end, the trial court found that "Huber provided an affidavit in which he claims that he operates a business that entails him buying items from other individuals and selling the items to others." The trial court also found that Huber provided documentation of the nature of his business. But most of the documentation was dated 2013, i.e., after the June

_____

[2] Finding of fact 7 begins with "Emily Liening testified that" and then summarizes Liening's testimony. As we recently explained, findings of fact that merely summarize a witness's testimony can be problematic:

> A finding that a particular witness testified, "The stoplight was red" is not the same as a finding of fact that the stoplight was red. A finding of fact should be a determination rather than a mere recitation. . . . If the trial court chooses to summarize the testimony of a witness, the best practice is to clearly articulate whether the court found that testimony credible.

State v. Coleman, 6 Wn. App. 2d 507, 516-17 n.40, 431 P.3d 514 (2018) (citations omitted), review denied, 193 Wn.2d 1005 (2019). Nevertheless, because there was no contradictory testimony regarding the screening process, we infer that the trial court found Liening's testimony credible.

2011 seizure, and "[n]either set of records attached to Mr. Huber's declarations connect specific property seized to his records." Based on these findings, which demonstrate at most that Huber was in the business of buying and selling used goods, the trial court did not err by concluding that Huber failed to show his right to possession of any specific items identified as stolen at the August 2011 property viewing. And because Huber failed to establish his right to possession, the trial court did not err by denying his CrR 2.3(e) motion as to the items identified as stolen at the August 2011 property viewing.

The trial court did err, however, by not only denying Huber's motion, but by going a step further and concluding that "[b]ased on the totality of the evidence, [t]he State has shown sufficient proof that the stolen items can be returned back to the victims." This is because the purpose of a CrR 2.3(e) hearing is "to determine the right to possession *as between the State and the defendant*." Marks, 114 Wn.2d at 735 (emphasis added). The hearing "is *not* a proceeding in which the court tries or adjudicates title." State ex. rel. Schillberg v. Everett Dist. Justice Court, 90 Wn.2d 794, 798, 585 P.2d 1177 (1978) (emphasis added).[3] For these reasons, although we affirm the trial court's denial of Huber's CrR 2.3(e) motion, we reverse the trial court's conclusion that "[t]he State has shown sufficient proof that the stolen items can be returned back to the victims."

Huber offers several reasons why the trial court erred by denying his

---

[3] Schillberg was decided under former JCrR 2.10(e), but because that rule had substantially the same wording as CrR 2.3(e), Schillberg has been relied on since in cases decided under CrR 2.3(e). See Marks, 114 Wn.2d at 733.

CrR 2.3(e) motion. First, he argues that the trial court erred by finding that the State carried its initial burden under CrR 2.3(e). He points out that "there was no testimony, affidavit or declaration from the jailhouse informant (Kirk Morlan) or any alleged victim other than Layne Huber" and that "none of the seized property was brought before the court." But Huber's argument is not persuasive, and Schillberg is instructive on this point.

In Schillberg, David Allen moved for return of property that had been seized from his car. Schillberg, 90 Wn.2d at 795. In support of his motion, Allen submitted an affidavit from his attorney "stating that his client had advised him that the items taken were legitimately in his possession, that he legitimately paid for such items and that he demanded their return." Schillberg, 90 Wn.2d at 795-96. In response, the State submitted an affidavit from an officer stating "that a man who had been observed taking merchandise from [a] store without paying for it was seen to enter a vehicle bearing the description and license number of Allen's car." Schillberg, 90 Wn.2d at 796. The officer also testified that "[t]he vehicle was seen later that day in a parking lot in Lynnwood" and that "[b]oxes stacked in the back seat bore tags of the store from which merchandise had been taken." Schillberg, 90 Wn.2d at 796. Based on this testimony, our Supreme Court concluded that "[t]here was good reason to believe the property may have been stolen, and the doubts on this matter were not resolved by the affidavit of [Allen's] attorney." Schillberg, 90 Wn.2d at 801. Accordingly, the court upheld the denial of Allen's motion for return of the seized property—even without any direct testimony from victims or any indication that the allegedly

10

stolen goods were brought before the court. Schillberg, 90 Wn.2d at 801.

Here, as in Schillberg, there is good reason to believe—even though there was no testimony from individual victims and the seized items were not brought before the court—that the property at issue may have been stolen. Specifically, as discussed, the trial court found that individuals who had been prescreened as victims of burglaries involving items similar to those seized from Huber then identified specific items as belonging to them. The trial court did, as Huber points out, observe that the State *could have* provided more convincing evidence in the form of victim affidavits. And we agree. Indeed, perhaps this appeal could even have been avoided had the State obtained victim affidavits, or had law enforcement simply included a sworn statement on its property identification forms. Nevertheless, there was sufficient reason, even without victim affidavits, to conclude that the property identified by individual victims may have been stolen based on the evidence that *was* presented and the court's unchallenged findings based thereon. Therefore, Huber's argument fails.

Huber next contends that TCSO's continued retention of the seized property constitutes a *de facto*—and unconstitutional—forfeiture. Specifically, he argues that CrR 2.3(e) does not provide any statutory authority for forfeiture and that the State was required to provide notice and an opportunity to be heard under RCW 10.105.010 and RCW 69.50.505, which are forfeiture statutes. Huber's argument fails for three reasons.

First, although Huber is correct that CrR 2.3(e) provides no statutory authority for forfeiture, State v. Roberts, 185 Wn. App. 94, 339 P.3d 995 (2014),

the case on which he relies for that proposition, involved a trial court's order of forfeiture in connection with a criminal conviction. Specifically, in Roberts, the trial court handwrote "'[f]orfeit any items seized by law enforcement'" on the defendant's judgment and sentence. Roberts, 185 Wn. App. at 96. The appellate court addressed CrR 2.3(e) merely to reject the State's argument that the trial court's forfeiture order should be upheld because CrR 2.3(e) provided the defendant a vehicle to request return of his property. Roberts, 185 Wn. App. at 96. Here, unlike in Roberts, the court did not order forfeiture. Therefore, Roberts is inapposite.

Second, the two out-of-state cases on which Huber relies are unpersuasive. In Awaya v. State, a Hawaii case, the relevant question before the court was whether, *in the absence of any proof that currency seized from the defendant was contraband*, the State of Hawaii could continue to retain the currency while it decided whether to file an action. 5 Haw. 547, 705 P.2d 54, 61 (1985). And in State v. Davis, a Utah case, the court observed that the problematic statute under which the State of Utah had retained the defendant's property gave "no provision for a hearing, and the prosecutor, rather than a judicial officer, is the sole arbiter of the ownership of property." 769 P.2d 840, 844 (Utah Ct. App. 1989). Here, unlike in Awaya, the State has presented evidence that the items Huber seeks were stolen. And unlike the statute at issue in Davis, CrR 2.3(e) requires an evidentiary hearing to determine the right to possession. Marks, 114 Wn.2d at 735. Therefore, Awaya and Davis do not aid Huber.

Third, and as previously discussed, a CrR 2.3(e) hearing is limited to determining "the right to possession *as between the State and the defendant.*" Marks, 114 Wn.2d at 735. Also as discussed, it is not a hearing to adjudicate title. Schillberg, 90 Wn.2d at 798. Therefore, "[d]ue process is not violated, since property is not taken." Schillberg, 90 Wn.2d at 798. To this end, because we reverse the portion of the trial court's order in which it deemed the State's evidence sufficient to prove that the property at issue can be returned to the individual victims, we do not further consider Huber's constitutional argument, i.e., that the trial court's order deprived him of property without due process. See State v. Bassett, 198 Wn. App. 714, 722 n.8, 394 P.3d 430 (2017) ("Where we can fairly resolve a case on nonconstitutional grounds, we will avoid deciding constitutional questions."), aff'd, 192 Wn.2d 67, 428 P.3d 343 (2018).

Huber next contends that the trial court erred by denying his CrR 2.3(e) motion without considering the legality of the underlying seizure. He relies on CrR 2.3(e) to support his argument, pointing out that the rule expressly applies only to an "'*unlawful* search and seizure.'" (Emphasis added.) But as discussed, Washington courts have applied CrR 2.3(e) both to unlawfully *and* to lawfully seized property. Alaway, 64 Wn. App. at 798 ("In Washington, CrR 2.3(e) governs motions for the return of illegally seized property and also motions for the return of lawfully seized property no longer needed for evidence." (footnote omitted)). And under CrR 2.3(e), a defendant who is not entitled to lawful possession of property is not entitled to its return—*even if the underlying seizure was unlawful.* CrR 2.3(e) ("A person aggrieved by an unlawful search and

13

seizure may move the court for the return of the property on the ground that the property was illegally seized *and that the person is lawfully entitled to possession thereof.*" (emphasis added)). In other words, once the trial court determined that Huber was not entitled to possession of the property that had been identified as stolen, it was not necessary to decide whether the underlying seizure was lawful. Huber's reliance on CrR 2.3(e)'s reference to "unlawful search and seizure" is misplaced, and the trial court did not err by declining to consider the legality of the underlying search.

Huber next argues that his challenge to the legality of the underlying search is properly before this court—even if the trial court did not rule on it—because (1) it can be raised for the first time on appeal under RAP 2.5(a)(3), (2) constitutional questions are questions of law that we review de novo, and (3) he properly preserved the issue for appeal by repeatedly raising it before the trial court. But Huber's arguments ignore the principle of judicial restraint, which dictates that when resolution of an issue effectively disposes of a case, we should not reach any other issues, particular constitutional ones. Wash. State Farm Bureau Fed'n v. Gregoire, 162 Wn.2d 284, 307, 174 P.3d 1142 (2007); see also Gersema v. Allstate Ins. Co., 127 Wn. App. 687, 697, 112 P.3d 552 (2005) ("A reviewing court should not decide a constitutional issue unless it is absolutely necessary to the determination of the case."). Here, we resolve Huber's appeal by (1) concluding that Huber's CrR 2.3(e) motion was properly denied based on his failure to prove his right to possession of the property as against the State and (2) reversing the trial court's conclusion that the property at issue could be

returned to victims. Therefore, we need not decide whether the underlying search was lawful.

Huber next asserts that "'where there is a right, there is a remedy'" and that if we decline to consider the legality of the underlying search, law enforcement would have a "free pass" to violate fundamental constitutional rights. But if Huber seeks a remedy for what he alleges was an illegal search and seizure, a civil action—not a CrR 2.3(e) motion—is the proper vehicle for seeking that remedy. Therefore, Huber's argument is unpersuasive.

As a final matter, Huber makes a passing reference in his opening brief to the fact that marijuana plants seized during the June 2011 search have not been returned to him. To the extent that this passing reference was intended as argument, it does not merit consideration. See Holland v. City of Tacoma, 90 Wn. App. 533, 538, 954 P.2d 290 (1998) ("Passing treatment of an issue or lack of reasoned argument is insufficient to merit judicial consideration.").

Motion for Reconsideration

Huber argues that the trial court erred by denying his motion for reconsideration. "Motions for reconsideration are addressed to the sound discretion of the trial court and a reviewing court will not reverse a trial court's ruling absent a showing of manifest abuse of discretion." Wilcox v. Lexington Eye Inst., 130 Wn. App. 234, 241, 122 P.3d 729 (2005). Here, for reasons already discussed, the trial court did not abuse its discretion by declining to reconsider its denial of Huber's CrR 2.3(e) motion. And because we reverse the portion of the trial court's order concluding that the allegedly stolen items can be

15

returned to individual victims, we need not consider whether the trial court erred by not reconsidering that conclusion. See Wash. State Farm Bureau Fed'n, 162 Wn.2d at 307 (declining to address additional issues on appeal when resolution of one issue effectively disposed of case.)

### Attorney Fees

Huber argues that he is entitled to an award of attorney fees under RAP 18.1. We disagree.

A party requesting fees under RAP 18.1 is required to provide argument and citation to authority "to advise the court of the appropriate grounds for an award of attorney fees as costs." Stiles v. Kearney, 168 Wn. App. 250, 267, 277 P.3d 9 (2012).

Here, Huber first argues that he is entitled to attorney fees under RCW 69.50.505(6). But that statute authorizes an award of fees to a claimant that substantially prevails in a forfeiture proceeding. For reasons already discussed, this is not a forfeiture (or de facto forfeiture) proceeding. Therefore, Huber is not entitled to fees under RCW 69.50.505(6).

Huber next argues that he is entitled to fees under 42 U.S.C. §§ 1983 and 1988. Those statutes provide that courts have discretion to award prevailing party fees in a civil action under 42 U.S.C. § 1983 for the deprivation of certain rights occurring under color of law. Cf. Maytown Sand & Gravel, LLC v. Thurston County, 198 Wn. App. 560, 566, 592-93, 395 P.3d 149 (2017) (awarding attorney fees under 42 U.S.C. §§ 1983 and 1988 in civil action that involved section 1983 claims for violation of substantive due process), reversed in part on other

16

grounds, 191 Wn.2d 392, 423 P.3d 223 (2018).  But this is not a civil action under 42 U.S.C. § 1983, so Huber is not entitled to fees under 42 U.S.C. §§ 1983 and 1988 here.

We affirm in part, reverse in part, and remand to the trial court to vacate its conclusion that "[b]ased on the totality of the evidence, [t]he State has shown sufficient proof that the stolen items can be returned back to the victims."

_____
Smith, J.

WE CONCUR:

_____          _____
                                          Leach, J.